528 F.2d 645
 4 O.S.H. Cas.(BNA) 1001, 1975-1976 O.S.H.D. ( 20,521
 DIAMOND ROOFING CO., INC., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and W. J.
Usery, the Secretary of Labor, Respondents.
S. D. MULLINS COMPANY, INC., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and W. J.
Usery, the Secretary of Labor, Respondents.
LANCE ROOFING COMPANY, INC., Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and W. J.
Usery, the Secretary of Labor, Respondents.
 Nos. 73--3704, 73--3705, 74--1343 Summary Calendar.
*
 United States Court of Appeals,
Fifth Circuit.
 March 15, 1976.
 
 Ira J. Smotherman, Jr., McNeill Stokes, Atlanta, Ga., for petitioners.
 William S. McLaughlin, Executive Secretary, OSHRC, Baruch A. Fellner, Counsel for Regional Litigation, William J. Kilberg, Sol. of Labor, U.S. Dept. of Labor, Barbara L. Herwig, Atty., Dept. of Justice, Washington, D.C., Beverley R. Worrell, Regional Sol., U.S. Dept. of Labor, Atlanta, Ga., Stephen F. Eilperin, Thomas S. Moore, Karen K. Siegel, Dept. of Justice, Michael H. Levin, Counsel, Dept. of Labor, Washington, D.C., for respondents.
 Petitions for Review of Orders of the Occupational Safety and Health Review Commission (Georgia case).
 Before BROWN, Chief Judge, THORNBERRY and AINSWORTH, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 These petitions for review of orders of the Occupational Safety and Health Review Commission (OSHRECOM)[1] are being considered together because they all require us to address the same question: Does 29 CFR § 1926.500(d)(1)[2] of OSHA's regulations for construction, which requires that a standard railing be placed around an open-sided floor, also apply to an open-sided roof? We answer the question in the negative and reverse.[3]
 
 The Roofers
 
 2
 Petitioners Diamond Roofing Company, Inc. (Diamond) and S. D. Mullins Company, Inc. (Mullins) install roofs for industrial and commercial buildings in the Atlanta, Georgia area. They employed 12 and 8 roofing employees, respectively, at the time of the inspections which resulted in their citations. In December 1971 both Diamond and Mullins were installing a flat[4] roof 25 feet above ground at 6,000 Boat Rock Boulevard in Atlanta. The roof perimeter did not contain a safety railing.
 
 
 3
 The Secretary of Labor (Secretary) issued citations against both Diamond and Mullins for nonserious violations of § 1926.500(d)(1), Diamond for 'employees working on roof with unguarded sides or edges' and Mullins for 'no guards on open-sided floors (roof).'[5] The petitioners contested the citations. The two cases were consolidated and a hearing was held in Atlanta on July 6, 1972. An Administrative Law Judge of OSHRECOM vacated the citations, finding that § 1926.500(d)(1)'s safety railing requirement for open-sided floors did not apply to open-sided roofs. Hodgson v. Diamond Roofing Co., Inc., OSHRC Docket No. 459 (Sept. 15, 1972). OSHRECOM reversed, Chairman Moran dissenting, concluding that the term 'open-sided floor' in § 1926.500(d)(1) did include a flat roof. Secretary of Labor v. S. D. Mullins Co., Inc., OSHRC Docket Nos. 364 & 459 (Oct. 24, 1973).
 
 
 4
 Petitioner Lance Roofing Company, Inc. (Lance) is another Atlanta roofing company which installs roofs for industrial and commercial buildings. On June 6, 1972 it was inspected while installing a flat roof at 4888 Frontage Road in Forest Park, Georgia. Lance employed 10 roofers at this job site. The roof perimeter did not contain a safety railing.
 
 
 5
 The Secretary issued a citation for 'no guardrailings, nor were the employees secured so as to prevent them from falling off the roof,' in violation of § 1926.500(d)(1).[6] Lance contested the citation. After a hearing on August 31, 1972, an ALJ of OSHRECOM vacated the citation, refusing to apply § 1926.500(d)(1) to open-sided roofs. Secretary of Labor v. Lance Roofing Co., Inc., OSHRC Docket No. 1102 (March 12, 1973). OSHRECOM reversed, Chairman Moran again dissenting, on the strength of its previous holding in Secretary of Labor v. S. D. Mullins Co., Inc., supra, which applied § 1926.500(d)(1) to roofs as well as floors.
 
 
 6
 We have jurisdiction of these petitions for review under 29 U.S.C.A. § 660(a).
 
 Why A Roof Is Not A Floor
 
 7
 Subpart M of OSHA's regulations for construction, 29 CFR § 1926, is entitled 'Floor and Wall Openings, and Stairways.'[7] According to its introductory provision, Subpart M applies 'where there is danger of employees or materials falling through floor, roof, or wall openings.' § 1926.500(a) (emphasis added). Subsection (b) applies to floor openings and floor holes, while open-sided floors, platforms and runways are treated in subsection (d). 'Floor opening' and 'floor hole' are specifically defined at § 1926.502(a) & (b) to include an opening or a hole in a roof. Thus, the standard railing requirement of subsection (b) applies to roof openings and roof holes as well as to floor openings and floor holes.
 
 
 8
 The term 'open-sided floor' in subsection (d), however, is not defined. (Nor are the general terms 'floor' or 'roof.') Since the definitions of 'platform' and 'runway' to which subsection (d) also applies do not indicate that they should be construed to include a roof, we conclude that--in contrast to subsection (b)--the standard railing requirement in subsection (d) applies only to open-sided floors and not to open-sided roofs.
 
 
 9
 Since Subpart M applies to roof as well as floor openings, respondents[8] OSHRECOM and the Secretary argue that the term open-sided floor should be construed to include an open-sided roof. The fallacy in this argument is that the very regulation in dispute twice recognizes a distinction between a floor and a roof. First, the general provision clause, § 1926.500(a), uses the terms floor and roof cumulatively to describe the kinds of openings to which Subpart M applies. Second, the terms floor opening and floor hole are specifically defined to include an opening or a hole in a roof. § 1926.502(a) & (b). The inclusion of the term roof in the general provision clause and in the definitions of floor opening and floor hole, combined with its absence from the open-sided floor provision of subsection (d)(1), can only be construed as an intent to distinguish between a floor and a roof and therefore to exclude open-sided roofs from the requirement of a safety railing.
 
 
 10
 This conclusion comports with the rule of construction that where a term is carefully employed in one place and excluded in another, it should not be implied where excluded. Federal Trade Commission v. Sun Oil Co., 1963,371 U.S. 505, 514--15, 83 S.Ct. 358, 364, 9 L.Ed.2d 466, 475; Bott v. American Hydrocarbon Corp., 5 Cir., 1972, 458 F.2d 229, 233; J. Ray McDermott & Co., Inc. v. Vessel Morning Star, 5 Cir., 1972, 457 F.2d 815, 818. Had the drafters of this regulation intended that § 1926.500(d)(1) apply to open-sided roofs, they very easily could have and should have said so, as they did with reference to roof openings and roof holes. If the regulation missed its mark, the fault lies in the wording of the regulation--a matter easily remedied under the flexible regulation promulgating structure,29 U.S.C.A. § 655(b) & (e); 29 CFR Part 1911, with no need to press limits by judicial construction in an industrial area presenting infinite operational situations.[9] Cf. Brennan v. Occupational Safety and Health Review Commission, 5 Cir., 1973, 488 F.2d 337.
 
 
 11
 The respondents contend that the regulations should be liberally construed to give broad coverage because of the intent of Congress to provide safe and healthful working conditions for employees. An employer, however, is entitled to fair notice in dealing with his government. Like other statutes and regulations which allow monetary penalties against those who violate them, an occupational safety and health standard must give an employer fair warning of the conduct it prohibits or requires, and it must provide a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents. Secretary v. California Stevedore and Ballast Co., OSHRC Docket No. 72 (June 16, 1972) (employers entitled to rely on standard's clear language, uncolored by additional subjective criteria). A regulation should be construed to give effect to the natural and plain meaning of its words. Johnson v. Udall, C.D.Cal., 1968, 292 F.Supp. 738, 750. See Commissioner v. Wodehouse, 1949, 337 U.S. 369, 69 S.Ct. 1120, 93 L.Ed. 1419, reh. denied, 338 U.S. 840, 70 S.Ct. 31, 94 L.Ed. 514 (tax regulation); M. Kraus & Bros., Inc. v. United States, 1946, 327 U.S. 614, 66 S.Ct. 705, 90 L.Ed. 894 (criminal prosecution for violation of maximum price regulation).
 
 
 12
 If a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express. Brennan v. Occupational Safety and Health Review Commission, 5 Cir., 1973, supra; Meehan v. Macy, 1968, 129 U.S.App.D.C. 217, 392 F.2d 822; 4 Davis, Administrative Law Treatise § 30.12. Cf. Cole v. Young, 1956, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (ambiguity in Executive Order is fault of government and is resolved against it). We recognize that OSHA was enacted by Congress for the purpose stated by the respondents. Nonetheless, the Secretary as enforcer of the Act has the responsibility to state with ascertainable certainty what is meant by the standards he has promulgated. Because the Secretary has failed in this regulation to so state, we must conclude that § 1926.500(d)(1) does not apply to open-sided roofs. The Act grants the Secretary--not OSHRECOM or the courts--the means to amend the regulation if he so desires.
 
 
 13
 Respondents OSHRECOM and the Secretary further argue that our conclusion presents the ludicrous anomaly of guarding employees working on opensided floors while leaving unprotected those employees working on open-sided roofs, which are always at greater heights. Similarly, in its opinion below OSHRECOM reasoned that the result we reach flies in the face of the practicalities of construction work and does violence to common sense. Assuming arguendo the validity of this 'common sense' approach, it is significant that there was disagreement even among OSHA Compliance Officers as to whether § 1926.500(d)(1) applied to open-sided roofs as well as floors. R. at 55. In addition, as powerful proof of the operational difference between a floor and a roof and at least as recognition that roofers have some basis for their reading of the intricate regulations, Administrative Law Judges of OSHRECOM have ruled in 10 of 12 previous cases that § 1926.500(d)(1) does not apply to open-sided roofs.[10] Furthermore, the practice in the roofing industry is to cover or guard roof holes and openings, which present a serious and unexpected hazard to roofers, but not to guard the roof perimeter, which is an obvious danger of which roofers are highly conscious.[11] R. at 104, 121--22. Finally, the American National Standard Institute's (ANSI) safety standard relating to the guarding of open-sided floors, platforms and runways,[12] from which § 1926.500(d)(1) has evolved with only minor changes, does not apply to open-sided roofs. R. at 131--32. Even if-- the distinction between an open-sided roof and an open-sided floor does not make safety sense, it is the regulation as written which must bear the blame.
 
 
 14
 The purpose of OSHA is to obtain safe and healthful working conditions through promulgation of occupational safety and health standards which tell employers what they must do to avoid hazardous conditions. To strain the plain and natural meaning of words for the purpose of alleviating a perceived safety hazard is to delay the day when the occupational safety and health regulations will be written in clear and concise language so that employers will be better able to understand and observe them.
 
 
 15
 Reversed.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I
 
 
 [1]
 This acronym was first suggested in Atlas Roofing Co. v. Occupational Safety and Health Review Commission, 5 Cir., 1975, 518 F.2d 990, 992 n. 1, petition for cert. filed, 44 U.S.L.W. 3331 (Nov. 21, 1975) (No. 75--746)
 
 
 [2]
 See note 7, infra
 
 
 [3]
 Each petitioner further contends that (i) it cannot be charged with violating § 1926.500(d)(1) because the Secretary of Labor did not comply with the publication requirements of 29 U.S.C.A. § 655(b)(8), (ii) applying § 1926.500(d)(1) to require perimeter guarding of roofs violates due process, and (iii) the Occupational Safety and Health Act of 1970 (OSHA) and its enforcement procedures are unconstitutional on their face and as applied. Cf. Lance Roofing Co. v. Hodgson, N.D.Ga., 1972, 343 F.Supp. 685, aff'd 409 U.S. 1070, 93 S.Ct. 679, 34 L.Ed.2d 659 (earlier constitutional attack dismissed for failure to exhaust administrative remedies). Most of the constitutional attack in (iii) has been foreclosed by Dan J. Sheehan Co. v. Occupational Safety and Health Review Commission, 5 Cir., 1975, 520 F.2d 1036, petition for cert. filed, 44 U.S.L.W. 3331 (Nov. 21, 1975) (No. 75--747); Lake Butler Apparel Co. v. Secretary of Labor, 5 Cir. 1975, 519 F.2d 84; and Atlas Roofing Co. v. Occupational Safety and Health Review Commission, 5 Cir., 1975, supra note 1. Accord, Frank Irey, Jr., Inc. v. Occupational Safety and Health Review Commission, 3 Cir., 1975, 519 F.2d 1200 (en banc), petition for cert. filed, 44 U.S.L.W. 3331 (Nov. 21, 1975) (No. 75--748). But in any event, in light of our disposition of these petitions, we do not reach these further issues. See Atlantic Marine, Inc. v. Occupational Safety and Health Review Commission, 5 Cir., 1975, 524 F.2d 476, 477 n. 3
 
 
 [4]
 Since none of the roofs in issue were sloped, 29 CFR § 1926.451(u)(3), which requires a catch platform around roofs with a slope greater than 4 in 12, is not applicable. Though both parties argued that the existence of this provision supports their respective positions, we do not feel that it is significantly probative in this case. But see Langer Roofing & Sheet Metal, Inc. v. Secretary of Labor, 7 Cir., 1975, 524 F.2d 1337 (Terms of § 1926.451 indicate that § 1926.500(d)(1) does not apply to flat roof)
 In this opinion, the term roof refers to a flat roof unless otherwise indicated.
 
 
 [5]
 Diamond was also cited for a nonserious violation of 29 CFR § 1910.314(d) (4), which is not in dispute
 
 
 [6]
 Lance was also cited for a nonserious violation
 
 
 [6]
 Lance was also cited for a nonserious violation disputed
 
 
 [7]
 Subpart M of 29 CFR § 1926 reads in relevant part as follows:
 Subpart M--Floor and Wall Openings, and Stairways
 § 1926.500 Guardrails, handrails, and covers.
 (a) General provision. This subpart shall apply to temporary or emergency conditions where there is danger of employees or materials falling through floor, roof, or wall openings, or from stairways or runways.
 (b) Guarding of floor openings and floor holes. (1) Floor openings shall be guarded by a standard railing and toeboards or cover, as specified in paragraph (f) of this section. In general, the railing shall be provided on all exposed sides, except at entrances to stairways.
 (8) Floor holes, into which persons can accidentally walk, shall be guarded by either a standard railing with standard toeboard on all exposed sides, or a floor hole cover of standard strength and construction that is secured against accidental displacement. While the cover is not in place, the floor hole shall be protected by a standard railing.
 (d) Guarding of open-sided floors, platforms, and runways. (1) Every open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in paragraph (f)(i) of this section, on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a standard toeboard wherever, beneath the open sides, persons can pass, or there is moving machinery, or there is equipment with which falling materials could create a hazard.
 (2) Runways shall be guarded by a standard railing, or the equivalent, as specified in paragraph (f) of this section, on all open sides, 4 feet or more above floor or ground level. Wherever tools, machine parts, or materials are likely to be used on the runway, a toeboard shall also be provided on each exposed side.
 § 1926.502 Definitions applicable to this subpart.
 (a) 'Floor hole'--An opening measuring less than 12 inches but more than 1 inch in its least dimension in any floor, roof, or platform through which materials but not persons may fall, such as a belt hold, pipe opening, or slot opening.
 (b) 'Floor opening'--An opening measuring 12 inches or more in its least dimension in any floor, roof, or platform through which persons may fall.
 (e) 'Platform'--A working space for persons, elevated above the surrounding floor or ground, such as a balcony or platform for the operation of machinery and equipment.
 (f) 'Runway'--A passageway for persons, elevated above the surrounding floor or ground level, such as a footwalk along shafting or a walkway between buildings.
 
 
 [8]
 The Act charges the Secretary with the responsibility of promulgating occupational safety and health standards, 29 U.S.C.A. § 655, and enforcing these standards through on-the-job inspections, the issuance of citations of violation and proposed penalties, and the prosecution of violators before OSHRECOM and the courts. §§ 657--60. OSHRECOM is charged with reviewing contested citations based on findings of fact after an opportunity for a hearing, and affirming, modifying or vacating the citation or directing other appropriate relief. § 659(c). Though it performs an adjudicatory function, OSHRECOM, required to be composed of safety and health experts, § 661(a), is properly a party similar to other administrative agencies in suits by the Secretary or private parties to review its orders. Brennan v. Gilles & Cotting, Inc., 4 Cir., 1974, 504 F.2d 1255, 1266--67; Subcommittee on Labor, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970, 462, 465 (Comm. Print 1971). See F.R.A.P. 15(a). The Secretary, who can seek judicial review or enforcement of OSHRECOM rulings, § 660(b), is also frequently named as a party respondent along with OSHRECOM--as in the present case--in suits by private persons under § 660(a). See, e.g. Dan J. Sheehan Co. v. Occupational Safety and Health Review Commission (and John T. Dunlop), 5 Cir., 1975, supra; Accu-Namics, Inc. v. Occupational Safety and Health Review Commission (and Secretary of Labor), 5 Cir., 1975, 515 F.2d 828, petition for cert. filed, 44 U.S.L.W. 3380 (Dec. 22, 1975) (No. 75--878)
 
 
 [9]
 The number of fine-print, double-columned pages--982 by our count--required to set out the occupational safety and health standards in Title 29, Chapter XVII of the Code of Federal Regulations, attests to the specificity and thoroughness with which the standards are constructed. The number of CFR pages devoted to a few specific industries is as follows: agriculture 18, bakeries 15, construction 177, longshoring 44, papermills 14, ship building 38, ship repairing 52, telecommunications 17, welding 24
 
 
 [10]
 Layton Roofing Co., Inc., OSHRC Docket No. 2425 (Oct. 16, 1973); Brown & Kerr, Inc., OSHRC Docket No. 3055 (Aug. 20, 1973); State Sheet Metal & Roofing Co., OSHRC Docket No. 2579 (Aug. 10, 1973); Glen Construction Co., Inc., OSHRC Docket No. 2537 (July 24, 1973); Langer Roofing & Sheet Metal, OSHRC Docket No. 1536 (July 18, 1973); Moser Heating & Roofing Co., Inc., OSHRC Docket No. 1295 (March 2, 1973); J. F. Probst, Inc., OSHRC Docket No. 963 (Feb. 9, 1973); Hawkins Construction Co., OSHRC Docket Nos. 503 & 598 (Jan. 23, 1973); Heyse Sheet Metal & Roofing Co., Inc., OSHRC Docket No. 681 (Oct. 16, 1972); Tyee Construction Co., OSHRC Docket No. 532 (Sept. 11, 1972) (§ 1926.500(d)(1) does not apply to open-sided roofs)
 Langer Roofing and Sheet Metal, Inc., OSHRC Docket No. 1208 (May 1, 1973); Psaty & Fuhrman, Inc., OSHRC Docket No. 1265 (March 26, 1973) (§ 1926.500(d)(1) does apply to open-sided roofs).
 
 
 [11]
 Petitioners' employees are roofers, who would not mistakenly expect the roof perimeter to be guarded, not general construction workers, who would be accustomed to working on railed or walled as well as open-sided floors
 
 
 [12]
 
 
 
 [5]
 Guarding of Open-Sided Floors, Platforms, and Runways
 
 
 [5]
 1 Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in 7.3) on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a toe board wherever, beneath the open sides, (1) persons can pass, (2) there is moving machinery, or (3) there is equipment with which falling materials could create a hazard
 The intermediate railing and the toe board regularly passed over the edge of the floor (as in lumber storage), or where the railing is set back 12 inches or more from the edge.
 American National Standards Institute, USA Standard Safety Requirements for Floor and Wall Openings, Railings, and Toe Boards 9 (USAS A.12--1, 1967).