EAST TEXAS MOTOR FREIGHT, INC., Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond J. Donovan, Secretary of Labor, Respondents.

No. 81–4186
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1982.

Charles C. Frederiksen, John V. Jansonius, Dallas, Tex., for petitioner.

Randy S. Rabinowitz, Allen H. Feldman, U. S. Dept. of Labor, Washington, D. C., Judith N. Macaluso, U. S. Dept. of Labor, Arlington, Va., for respondents.

Before CLARK, Chief Judge, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

This is an appeal of a penalty assessed by the Occupational Safety and Health Review Commission (OSHRC), under the Occupational Safety and Health Act of 1970 (the Act), 29 U.S.C. § 651, *et seq.*, for a "serious"[1] violation of the Act. Petitioner, East Texas Motor Freight, Inc. (ETMF), was found to be in violation of the Act in not removing from service a forklift truck which was in need of repair, defective, and unsafe.[2] ETMF appeals on the grounds that there was not sufficient evidence to support the findings that ETMF violated the Act or that the alleged violation was "serious" within the meaning of the Act. We hold that there was sufficient evidence to support the findings and therefore affirm the decision.

On September 27, 1979, in response to an ETMF employee complaint, Henry Slagle, an Occupational Safety and Health Administration (OSHA) safety engineer, conducted an inspection of a fork lift truck at ETMF's Fort Worth terminal. On October 25, 1979, ETMF was issued a citation charging it with a violation of 29 C.F.R. § 1910.-178(p)(1). The citation indicated the following:

> 29 CFR 1910.178(p)(1): Powered industrial truck(s) with defect(s) or in any way

---

**1.** 29 U.S.C. § 666(j) provides:

For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

**2.** 29 C.F.R. § 1910.178(p)(1) provides:

If at any time a powered industrial truck is found to be in need of repair, defective, or in any way unsafe, the truck shall be taken out of service until it has been restored to safe operating condition.

29 U.S.C. § 654(a)(2) requires employers to "comply with occupational safety and health standards promulgated under this chapter."

unsafe had not been withdrawn from service until restored to safe operating condition(s):

> Mechanism for preventing unintentional lateral movement of fork is defective, causing movement resulting in unbalanced loads on forks or causing forks to come off entirely when it reached the fork removal slot; right-hand fork on the Allis Chalmers fork lift, Co. No. 3144, S/N 99642, in use on the freight dock at Baurline St. facility.

A penalty of $560 was proposed in the citation. ETMF formally contested the citation, and, upon the filing of a complaint and answer with the OSHRC, a hearing was held before an OSHRC administrative law judge (ALJ). The ALJ concluded that ETMF was in serious violation of 29 C.F.R. § 1910.178(p)(1), affirmed the October 25 citation and assessed a penalty of $300. When the OSHRC declined to review the decision of the ALJ, that decision became a final OSHRC order on March 26, 1981. 29 U.S.C. § 661(f). ETMF petitioned this court for review on May 18, 1981, basing jurisdiction on 29 U.S.C. § 660(a).

The forklift has two forks (L-shaped blades) on which loads are carried. The forks are held in place by brackets at the top and bottom of the vertical portion of each fork. A pin mechanism at the top of each fork prevents lateral movement of the blades when the mechanism is engaged such that the pins are positioned in grooves on the upper portion of the carriage. The mechanism is also designed such that when the pins are not engaged in the grooves on the carriage, the forks may be moved laterally along the carriage to the desired closeness for the load. A handle attached to each pin is designed to facilitate the engagement and disengagement of the pins in the grooves.[3] The ALJ found, among other things, the following: (1) that the handle

on the locking pin designed to keep the right forklift blade in a desired position was missing, permitting the pin to turn so that it would not engage slots or notches in the upper carriage bar of the forklift apparatus, and that the notches were also somewhat worn and rounded; (2) that as a result of these conditions, the right blade could move to a fork removal slot[4] and become disengaged; (3) that, in addition, these conditions posed a hazard that a load might become overbalanced and fall, or that the blade itself would fall, on an employee; and (4) that ETMF knew, or in the exercise of reasonable diligence could have known, of this condition, but did not remove the forklift from service, and that there was a substantial probability that death or serious physical harm could result from the violative condition.

ETMF argues on appeal that: (1) the Secretary failed to satisfy its burden of proving by substantial evidence[5] that ETMF violated 29 C.F.R. § 1910.178(p)(1), and (2) the Secretary failed to satisfy its burden of proving by substantial evidence that the alleged violation of 29 C.F.R. § 1910.178(p)(1) was "serious" within the meaning of the Act.

*I. The Violation of 29 C.F.R. § 1910.178(p)(1).*

■ Noting that the primary basis of the ALJ's finding that ETMF was in violation of 29 C.F.R. § 1910.178(p)(1) was the finding that the handle on the locking mechanism was missing, ETMF argues that the record is devoid of any evidence that the handle had any function in keeping the blade in a fixed position or that the forklift was unsafe. ETMF stresses the inadequacy of the inspection performed by Slagle on the basis of which the citation was issued. It points out that Slagle inspected the forklift for no more than five minutes and that

---

**3.** The handles, when lifted, can be used to turn the pins which, because of their shape, will only fit into the carriage grooves when turned a certain way.

**4.** This slot in the lower carriage bar allows removal of a blade when the blade is aligned with it.

**5.** 29 U.S.C. § 660(a) provides, in pertinent part:

> The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive.

all he did was slide one of the forks over two or three of the inner notches on the upper carriage bar. It then points to the testimony of Leonard Bergonia, a product safety manager for the manufacturer of the forklift, that the outer notches, over which the locking pin would have to pass in order to become aligned with the fork removal slot, were not so worn that they would not hold the blades in place if the pins were engaged in those notches. The ALJ recognized the plausibility of this explanation, but nevertheless still concluded that the forklift was in need of repair, defective, and unsafe because, without the handles on the locking pins, the pins could become turned in such a way that they would not engage in the notches. Although, as the ALJ recognized, Slagle's inspection alone may not have been sufficient to demonstrate the violation, we agree that there is substantial evidence in the record as a whole to support the finding of a violation.

ETMF does not deny that there was substantial evidence to support the ALJ's finding that the handle was missing from the locking pin. Instead, ETMF argues that there is no evidence in the record that the lack of the handle kept the latch pin from being effective. Although he testified that the handle is not necessary to engage the pin, Bergonia, the expert relied on by ETMF, testified that without the handle the mechanism is defective in the sense that it is not as easy to engage or to disengage and that the lack of the handle would make it easier for the pin to be turned the wrong way. In addition, there was a substantial amount of testimony by persons who had operated the forklift that they had personally observed the blades falling off and loads becoming unbalanced. That these witnesses could not specify the particular dates or times when this occurred does not totally discredit their testimony, particularly since they did testify that such occurrences had taken place around the time of the inspection. We conclude that there is substantial evidence in the record to support the ALJ's findings that the handle was

missing, that this permitted the pin to turn so that it would not engage, that the notches were worn and that the blades had in fact moved along the carriage so as to become disengaged or cause loads to become unbalanced.

## II. ETMF's Knowledge of the Violation.

ETMF also argues that the alleged violation was not a "serious" violation within the meaning of the Act. Section 666(j) includes an exception where an employer did not know and could not, through reasonable diligence, have known of the presence of the violation.[6] With respect to the requisite knowledge, ETMF points to the existence of its long standing maintenance program, and to inspections of the forklift immediately prior to the OSHA inspection, to suggest that it had no grounds for awareness of the violation. It cites *Cullen Industries, Inc.*, 6 BNA OSHC 2177 (1978), in arguing that the OSHRC has recognized that the existence of an employer maintenance and inspection program precludes a finding that the employer possessed knowledge of a safety violation. In *Cullen*, however, the evidence showed that if a vehicle was defective it was promptly repaired or taken out of service and there was a lack of evidence that the employer knew or should have known that the brakes on the cited forklift had a five-foot drift. The evidence in this case does not support similar findings. The evidence does not establish that if the forklift was defective it was promptly repaired; on the contrary, the evidence indicates that the defective condition had existed for quite some time. As the ALJ noted, ETMF had received at least three written complaints from employees shortly before the OSHA inspection. ETMF's own argument as to having inspected the forklift immediately prior to the OSHA inspection shows that it did not repair the forklift even after it was alerted to the defective mechanism because in its opinion the forklift was not unsafe.

 ETMF points to the fact that, immediately prior to the OSHA inspection, ETMF had had the forklift inspected and

**6.** *See* note 1 *supra.*

that the inspectors, a local mechanic, a representative of the forklift manufacturer and ETMF's director of safety, had determined that the forklift was safe for all normal operation. ETMF cites exclusively to the testimony of its terminal manager as to the results of these inspections. The ALJ concluded that it was not clear whether ETMF's inspection was directed specifically to the worn slots in the carriage or the fork lock pins. When considered along with the evidence that ETMF had been informed by its employees several times of the hazardous condition, ETMF's conclusion that the forklift was safe does not disprove its knowledge that the forklift was defective and in need of repair. It is such knowledge of the "presence of the violation" that is relevant to the finding of a "serious" violation. *See* 29 U.S.C. § 666(j), *supra*, note 1. In *Secretary v. Sun Outdoor Advertising, Inc.*, 5 BNA OSHC 1159 (1977), for example, the OSHRC observed that "Section 17(k) of the Act requires knowledge only of the violation, not of its probable consequences." In *Southwestern Acoustics & Specialty, Inc.*, 5 BNA OSHC 1091 (1977), the OSHRC stated that "[t]he knowledge element of section 17(k) is directed not to the requirements of the law, but to the physical conditions which constitute a violation." Section 1910.178(p)(1) required that the forklift be taken out of service if found to be "in need of repair, defective, *or* in any way unsafe." 29 C.F.R. § 1910.178(p)(1) (emphasis added). We believe that ETMF's knowledge that the forklift was defective and in need of repair, then, is sufficient to satisfy the knowledge requirement of § 666(j).[7]

*III. The "Seriousness" of the Violation.*

■ Finally, ETMF argues that the alleged violation was not "serious" within the meaning of the Act because the Secretary failed to demonstrate by any degree of probability that death or serious injury could be a consequence of the forklift's condition. In *Shaw Construction, Inc. v. Occupational Safety and Health Review*

*Commission*, 534 F.2d 1183 (5th Cir. 1976), we adopted the construction of § 666(j) adopted by the Ninth Circuit in *California Stevedore and Ballast Co. v. Occupational Safety and Health Review Commission*, 517 F.2d 986 (9th Cir. 1975). Under that construction, a violation is "serious" if it "make[s] possible an accident involving a substantial probability of death or serious injury." 534 F.2d at 1185. A violation may be determined to be serious "where, although the accident itself is merely possible (*i.e.*, in statutory terms, 'could result from a condition'), there is a substantial probability of serious injury if it does occur." *Id.* at 1185 n.4. The ALJ determined that it was obvious that injuries ranging from crushed toes to death could result from a falling blade or load. There was in fact substantial evidence in the record to support this conclusion. That ETMF had to warn employees to stay clear of the lift and off of the blades only tends to confirm the requisite possibility of an accident, and ETMF does not deny that if an accident did occur there would be a substantial probability of serious injury.

We conclude that there was substantial evidence on the record as a whole to support the OSHRC findings that ETMF violated 29 C.F.R. § 1910.178(p)(1) and that this violation was a "serious" violation of the Act. The decision of the OSHRC is therefore affirmed.

AFFIRMED.

---

7. ETMF has not argued that 29 C.F.R. § 1910.-178(p)(1) does not give fair notice of the conduct which it requires. *See, e.g., Diamond* *Roofing Co. v. Occupational Safety and Health Review Commission*, 528 F.2d 645, 649 (5th Cir. 1976).