# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60173

EMPLOYER SOLUTIONS STAFFING GROUP II, L.L.C.,

      Petitioner

v.

OFFICE OF THE CHIEF ADMINISTRATIVE HEARING OFFICER; JEH
CHARLES JOHNSON, SECRETARY, DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES OF AMERICA,

      Respondents

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2016

Lyle W. Cayce
Clerk

Petition for Review of an Order of the
Office of the Chief Administrative Hearing Officer

Before DAVIS, PRADO, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Employer Solutions Staffing Group II, L.L.C. ("ESSG"), petitions for review of an order imposing a fine for its alleged failure to complete properly the employment verification forms for 242 employees. ESSG used one person in Texas to examine original documents presented by employees and another person in Minnesota to examine photocopies of the same documents and then sign the verification form. An administrative law judge found that ESSG's procedure violated the Immigration and Nationality Act. We GRANT the petition for review and VACATE the order except for a ruling as to one employee for which no review was sought.

No. 15-60173

FACTUAL AND PROCEDURAL BACKGROUND

In April 2010, ESSG, a temporary staffing agency, formed an agreement with Larsen Manufacturing Co., LLC, to provide staff for Larsen's facility in El Paso, Texas. ESSG did not hire staff directly for Larsen but subcontracted with Flexicorps, Inc., based in El Paso, to perform this task. Flexicorps employees made all the hiring decisions for temporary workers at the Larsen facility. In addition, Flexicorps completed part of the Employment Eligibility Verification Form (the "I-9 Form") for each employee hired. Flexicorps employees would examine original identifying documents presented by the hired employees and ensure hired employees completed Section 1 of the I-9 Form, which required providing basic biographical information and signing an attestation that the hired employee was legally authorized to work. Flexicorps employees would make color photocopies of the original documents and send the photocopies along with the I-9 Form to ESSG in Edina, Minnesota. ESSG employees would then inspect the photocopies and complete Section 2 of the I-9 Form, which required a description of the identifying documents presented by the hired employee and a signed attestation that the employer examined the documents and believed them to be genuine.

In November 2011, Immigration and Customs Enforcement ("ICE"), which is part of the Department of Homeland Security ("DHS"), served a Notice of Inspection on ESSG, requesting that ESSG present for inspection I-9 Forms for current and terminated employees in El Paso between February 2008 and February 2011. In February 2013, ICE served a Notice of Suspect Documents and Notice of Intent to Fine on ESSG. ICE alleged that ESSG failed to ensure that 242 employees completed properly Section 1, or failed to complete properly Section 2 or 3 of the I-9 Form, thereby committing substantive paperwork violations. Further, ICE claimed ESSG violated the Immigration and

2

No. 15-60173

Nationality Act ("INA"), 8 U.S.C. § 1324a(a)(1)(B), and ordered ESSG to pay fines totaling $237,162.75.

ESSG contested the charges and requested a hearing before an administrative law judge ("ALJ"). The ALJ ruled for ICE in a Summary Decision, finding ESSG failed to complete properly Section 2 of the I-9 Form for 242 employees. The ALJ fined ESSG $226,270 for these violations.[1] ESSG timely filed a petition for review of the ALJ's order with this Court.

## DISCUSSION

The Office of the Chief Administrative Hearing Officer ("OCAHO") had jurisdiction for its actions under 8 U.S.C. § 1324a(e)(3)(A)–(B).[2] This court has jurisdiction to review final orders issued by OCAHO. § 1324a(e)(8).

Agency determinations are reviewed under the "highly deferential" standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), *Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 453 (5th Cir. 2015), while an agency's interpretations of caselaw are reviewed *de novo*. *Willy v. Admin. Review Bd.*, 423 F.3d 483, 490 & n.18 (5th Cir. 2005). We apply the same *de novo* standard to agency determinations of constitutional law. *Trinity Marine Prods., Inc. v. Chao*, 512 F.3d 198, 201 (5th Cir. 2007). Appropriate deference will be given to DHS's and ICE's interpretations of ambiguities in the INA and in their own implementing regulations. *See Chevron USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

---

[1] The ALJ also found ESSG failed to present an I-9 Form for one employee and fined ESSG $981.75 for this violation. ESSG does not appeal that fine.

[2] The INA requires the Attorney General to provide an administrative hearing at the request of persons or entities charged with violating the verification requirements of the INA. *See* 8 U.S.C. § 1324a(e)(3). The Attorney General designated OCAHO — an administrative agency under the control of the Executive Office for Immigration Review of the Department of Justice — to adjudicate these cases, as well as other related violations of the INA. *See* 28 C.F.R. §§ 68.1–.2.

No. 15-60173

*I.     Overview of the INA Employer Verification System*

It is unlawful for an employer to hire an individual without complying with certain identity and employment authorization verification requirements. *See* 8 U.S.C. § 1324a(a)(1)(B), (b).  The INA specifies that a "person or entity must attest, under penalty of perjury and on a form designated or established by the Attorney General by regulation, that it has verified that the individual is not an unauthorized alien by examining" employee documents. § 1324a(b)(1)(A).  The statute provides that a document is acceptable only if it "reasonably appears on its face to be genuine."  § 1324a(b)(1)(A)(ii).

DHS, not the Attorney General, now has authority to create the form that facilitates the employer verification requirements; DHS also investigates violations of the INA.   *See* § 1324a(b)(1)(A), (e)(1)–(2).[3]  Regulations for implementing the INA have been promulgated by DHS and its predecessor agency in the Justice Department, the Immigration and Naturalization Service ("INS").  *See* 8 C.F.R. § 274a.2.  Under these regulations, employers must examine documents presented by the employee and attest to having done so on Section 2 of the I-9 Form.  § 274a.2(b)(1)(ii). The Section 2 attestation in the form as it existed at the time of the events in this case read:

> I attest, under penalty of perjury, that I have examined the document(s) presented by the above-named employee, that the above-listed document(s) appear to be genuine and to relate to the employee named, that the employee began employment on *(month/day/year)* _____ and that to the best of my knowledge the employee is authorized to work in the United States.

---

[3] The Attorney General's authority to issue regulations to enforce the INA employment verification requirements was transferred to DHS in 2002. *See Clark v. Martinez,* 543 U.S. 371, 374 n.1 (2005).

No. 15-60173

The regulations establish that documents presented by the employee must be originals.  § 274a.2(b)(1)(v).

## II.    *Alleged Violation of the INA*

The ALJ found that ESSG failed to complete Section 2 of the I-9 Form properly because the ESSG employee who signed the I-9 Form did not examine the original employee documents personally and in the presence of the newly hired employee. Therefore, the ALJ held, the I-9 Form's attestation was false. ESSG argues that it did not attest falsely because (1) the INA allows for ESSG's employee to speak about actions performed by its corporate representative in El Paso, (2) the INA does not require ESSG's employee, as opposed to its corporate representative in El Paso, to examine original documents, and (3) the INA does not require ESSG's employee, as opposed to its corporate representative in El Paso, to examine documents in the presence of the newly hired employee.

The central issue before us is whether the INA's verification procedures require personal, not corporate, attestation.  DHS argues personal attestation is required, meaning that the same ESSG representative who examines an employee's original documents must also meet with the employee and sign the I-9 Form's Section 2 attestation.  Alternatively, ESSG argues that corporate attestation at least is permitted, allowing its representatives in one state to examine original documents and meet with an employee while a representative in another state attests in Section 2 of the I-9 Form.  The only difference in the parties' views is whether the person who signs the Section 2 attestation must also have examined the original documents in the presence of the employee, or whether those tasks may properly be performed by different people.  To find the answer, we review the statute, DHS's regulations and prior adjudications

interpreting the statute, the I-9 Form itself, and the ALJ's interpretation in this enforcement action.

## A. *The Statute*

We begin with the relevant statutory text. The INA provides that a "person or entity must attest . . . on a form [established by the appropriate agency] by regulation, that it has verified that the individual is not an unauthorized alien by examining" employee documents. § 1324a(b)(1)(A). It also states that a "person or entity has complied with the requirement of this paragraph with respect to examination of a document if the document reasonably appears on its face to be genuine." § 1324a(b)(1)(A)(ii).

In its memorandum of law presented to OCAHO urging a summary decision, DHS argued that Section 1324a supported that ESSG had failed to verify the identity and employment eligibility of 242 employees. It argued that Section 1324a "makes it clear that in Section 2 of the Form I-9, the employer must attest through a signature that it has verified that the individual is not an unauthorized alien by examining the documents presented by the employer." Further, only original documents could be examined. DHS did not discuss the need for the employee to be present with the original documents.

ESSG responded, in part with an explanation of its decision to handle all the I-9 Form attestations centrally in Minnesota after employees presented their individual documents and were interviewed, not just in El Paso but in 22 states around the country. ESSG argued that Section 1324a allows corporate attestation, and therefore, its approach is consistent with the statute. The ALJ rejected ESSG's position, finding it "impossible" for an attester to say the documents appear genuine and to relate to the employee unless the attester was physically present with the documents and the employee.

No. 15-60173

In its briefing here, DHS concedes the INA itself does not address whether the attester must be the same person who physically examines the documents in the presence of the hired employee.  We agree.

### B.  Regulations and Prior Adjudications

Next, we consider the relevant regulations and prior adjudications interpreting the INA.  DHS argues that, because the INA does not provide a clear answer, "the choice of developing the answer is left to the agency."  That may be, but at this point we are trying to discover how and when the agency developed its answer.  We find no answer in any regulation.  The closest is this: "an employer, his or her agent, or anyone acting directly or indirectly in the interest thereof, must . . . [c]omplete section 2 . . . on the Form I-9 . . . and sign the attestation . . . ."  § 274a.2(b)(1)(ii)(B).  We do not read this regulation to require that the same person who met the hired employee and examined his or her original documents must also sign the attestation.

DHS argues we owe *Chevron* deference to regulations requiring "full and proper completion of the Form I-9."  *See* § 274a.2(b)(1)(i)(A)–(B).  This point is not contested but does not aid our review.  If corporate attestation is permitted, then ESSG's verification procedure could be deemed "full and proper."  DHS also argues "copying documents does not provide an alternative means for fulfilling the obligation to properly complete the Form I-9."  *See* § 274a.2(b)(3).  Again, the issue of copies begs the question of the permissibility of corporate attestation.   Original documents were examined; someone else then so attested.

The only possibly relevant OCAHO adjudication that has been discussed involves a wholly inapposite situation where the employer attached photocopies of hired employees' documentation in lieu of actually filling out the I-9 Form.  *See United States v. Manos & Assocs., Inc.*, 1 OCAHO 130 (1989).

7

No. 15-60173

Thus, we find no clear bar to corporate or entity attestation in the regulations and prior adjudications interpreting the INA.

## C. *The I-9 Form and the ALJ's Interpretation in this Action*

After finding no guidance from the relevant statutory text and regulations on whether the same person who meets a hired employee and examines documents must also attest, we examine two other sources allegedly supporting DHS's view that corporate attestation is prohibited.

First, in a Rule 28(j) letter filed days before oral argument, DHS argued for the first time that we owe *Auer* deference to language appearing on the I-9 Form itself. *See Auer*, 519 U.S. at 461. This form is the only identified source allegedly interpreting DHS's ambiguous regulations that was made public prior to this enforcement action. Because DHS asked only for *Auer* deference, we limit ourselves to analyzing that level of deference as "we do not craft new issues or otherwise search for them in the record." *United States v. Brace*, 145 F.3d 247, 255 (5th Cir. 1998) (en banc). That form of deference will be given to an agency's interpretation of its own ambiguous regulations unless the interpretation is "plainly erroneous or inconsistent with the regulation, or there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 454 (5th Cir. 2015) (quotation marks omitted) (citing *Auer*, 519 U.S. at 461–62). We assume without deciding that the I-9 Form qualifies as DHS's interpretation of its own ambiguous regulation.

Second, DHS claims we owe *Chevron* deference to the ALJ's decision in this enforcement action. DHS argues "OCAHO permissibly determined . . . the same individual who reviewed the original documents must be the individual that attests to their apparent genuineness in Section 2" of the I-9 Form. We first note that the ALJ's opinion could be eligible for *Chevron* deference only if

8

it has the "force of law," that is, if the opinion is precedential and thus binds third parties.[4]  *See Dhuka v. Holder*, 716 F.3d 149, 154–56 (5th Cir. 2013) (holding a non-precedential decision of the BIA is not owed *Chevron* deference). Here, the ALJ's decision was published in the OCAHO reporter and appears to be precedential; therefore, it may warrant *Chevron* deference when it interprets the INA.  *See United States v. Emp'r Sols. Staffing Grp. II, LLC*, 11 OCAHO 1242 (2015).[5]

Despite the degree of deference potentially owed to the I-9 Form and the ALJ's decision, we conclude ESSG lacked fair notice that corporate attestation was prohibited.  That fact affects the operation of deference, as we now explain.

### 1. Lack of Fair Notice

"[S]tatutes and regulations which allow monetary penalties against those who violate them . . . must give [a regulated party] fair warning of the conduct [they] prohibit[] or require[] . . . ."  *Diamond Roofing Co., Inc. v.*

---

[4] There is caselaw suggesting no deference is owed to an agency's interpretation where, like here, the interpretation appears for the first time in the agency's adjudication under consideration. *See Paz Calix v. Lynch*, 784 F.3d 1000, 1007 (5th Cir. 2015) (citing *R&W Tech. Servs. Ltd. v. CFTC*, 205 F.3d 165, 171 (5th Cir. 2000)).  Other caselaw implies we may give the agency's adjudication currently under review some degree of deference when it interprets an ambiguous statute the agency is authorized to administer. *See, e.g.*, *Knapp*, 796 F.3d at 454.  Further, one unpublished decision from this court suggested we review *de novo* all OCAHO conclusions of law. *See Wije v. Barton Springs*, 81 F.3d 155, 1996 WL 101380, at *1 (5th Cir. 1996) (citing *Mester Mfg. Co. v. I.N.S.*, 879 F.2d 561, 565 (9th Cir. 1989)).  Yet, the Ninth Circuit decision we relied on in *Wije* provides further context for review of OCAHO decisions, explaining "[w]ithin the de novo framework . . . we give a certain amount of deference to an agency's reasonable construction of a statute it is charged with administering." *Mester*, 879 F.2d at 565.  We need not address these possible tensions in our caselaw because we resolve the case against DHS even assuming the ALJ's interpretation would typically warrant deference.

[5] OCAHO explains that it "publishes decisions that have been selected for and may be used as precedent[.]" U.S. DEPARTMENT OF JUSTICE, OFFICE OF THE CHIEF ADMINISTRATIVE HEARING OFFICER, https://www.justice.gov/eoir/office-of-the-chief-administrative-hearing-officer-decisions (last visited Aug. 9, 2016).  As our citation shows, the ALJ's decision in this action was published in Volume 11 of the OCAHO reporter.

No. 15-60173

*Occupational Safety & Health Review Comm'n*, 528 F.2d 645, 649 (5th Cir. 1976). Recently, the Supreme Court cited favorably to *Diamond Roofing* for the proposition "that agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 & n.15 (2012) (alterations in original) (quoting *Gates & Fox Co. v. Occupational Safety & Health Review Comm'n*, 790 F.2d 154, 156 (D.C. Cir. 1986)). The Court also quoted favorably this summary from a treatise: "[I]n penalty cases, courts will not accord substantial deference to an agency's interpretation of an ambiguous rule in circumstances where the rule did not place the individual or firm on notice that the conduct at issue constituted a violation of a rule." *Id.* at 2167 n.15 (quoting 1 R. PIERCE, ADMINISTRATIVE LAW TREATISE § 6.11, at 543 (5th ed. 2010)).

Fair notice requires that the agency have "state[d] with ascertainable certainty what is meant by the standards [it] has promulgated." *Diamond Roofing*, 528 F.2d at 649. This rule requires that a statute or agency action "give an employer fair warning of the conduct it prohibits or requires, and it must provide a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents." *Id.* The challenged statute or agency action must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

First, we examine the I-9 Form. Our question as to the form is whether the version in the record states with ascertainable certainty the kind of attestation that DHS claims must be made. Section 2 of the form is entitled "Employer Review and Verification," and it is "[t]o be completed and signed by employer." Section 2 concludes with the following attestation: "I attest, under penalty of perjury, that I have examined the document(s) presented . . . and that to the best of my knowledge the employee is authorized to work in the

10

No. 15-60173

United States." Beneath the attestation, there is a signature block for the "Employer or Authorized Representative." In the instructions to the I-9, we learn that "the term 'employer' means all employers including those recruiters and referrers for a fee who are agricultural associations, agricultural employers, or farm labor contractors."

The I-9 Form provides minimal support for DHS's claimed interpretation that would prohibit corporate attestation. The attestation includes language that appears personal: "I attest" and "I have examined."[6] Yet, if attestation by the entity is permissible, this language from the form could be interpreted to allow the individual who attests to verify all the actions performed by the entity as a whole. DHS may have recognized the uncertainty when, subsequent to fining ESSG, DHS clarified the I-9 instructions to read: "The person who examines the documents must be the same person who signs Section 2." U.S. CITIZENSHIP & IMMIGRATION SERVS., OMB No. 1615-0047, INSTRUCTIONS FOR EMPLOYMENT ELIGIBILITY VERIFICATION 3 (2013). DHS's decision to clarify the instructions is at least some support that at the time of ESSG's violation, the I-9 attestation was not as clear as DHS now claims.

Finally as to the form, Section 2 consistently refers to the *employer*'s verification requirements. The instructions to the I-9 Form define *employer* broadly. In its Rule 28(j) letter, DHS offered a conclusory explanation for how the I-9 Form supports its interpretation: "[I]t is clear from the certification in

---

[6] At oral argument, DHS presented this new justification. It argued that if corporate attestation were permitted, the I-9 Form's certification "wouldn't say 'I reviewed these documents' and 'I determined that these documents relate to this individual under the penalty of perjury.'" An argument raised for the first time at oral argument is waived. *See Comsat Corp. v. F.C.C.*, 250 F.3d 931, 936 n.5 (5th Cir. 2001). Further, the argument relies on DHS's interpretation of its ambiguous I-9 Form. We have held no deference is owed an agency's interpretation of its earlier ambiguous interpretations. *See Elgin Nursing & Rehab. v. U.S. Dep't of Health & Human Servs.*, 718 F.3d 488, 493–94 (5th Cir. 2013).

11

section 2 of the Form I-9 that it must be the same individual, and that interpretation of the regulatory requirement warrants deference." We have examined the I-9 Form and do not agree. The form does not fairly address whether corporate attestation is prohibited or permitted. To the extent the I-9's attestation implies it must be personal, the I-9 failed to state that requirement with ascertainable certainty.

Second, we examine another authoritative source — the ALJ's decision in this case. Was that interpretation of the INA in this enforcement action an "unfair surprise"? *See Knapp*, 796 F.3d at 457–58. The ALJ suggested, without expressly holding, that corporate attestation is prohibited. Relying only on commonsense, which no doubt is important, the ALJ explained "[i]t is simply impossible . . . for a payroll administrator in Edina, Minnesota to determine whether a document reasonably appears to relate to an individual when the administrator never saw the individual and the individual only presented original documents to a different person more than a thousand miles away in El Paso, Texas." In support, the ALJ did not cite to any statute, regulation, or prior adjudication. Apparently, neither Congress nor DHS had ever declared a bar to corporate attestation prior to this enforcement action. For one person in an entity to attest to all the company did is not clearly barred.

Moreover, the statute and regulations suggest that corporate attestation is permitted. Either a "person or *entity*" may attest. 8 U.S.C. § 1324a(b)(1)(A) (emphasis added). An "entity" includes a company. Corporate attestation would permit the company as a whole to perform the examination of original documents, in the presence of the hired employee, and the attestation, even if the same corporate representative does not perform all the required acts. The relevant regulation says that "an employer, his or her agent, or anyone acting directly or indirectly in the interest thereof, must . . . [c]omplete section 2 . . . on the Form I-9 . . . and sign the attestation . . . ." § 274a.2(b)(1)(ii)(B).

No. 15-60173

The regulation can be fairly read to allow corporate attestation, appearing to envision more than one person involved in completing Section 2. Finally, the I-9 Form itself calls for the signature of the "Employer or Authorized Representative," and the instructions define "employer" broadly. All three sources leave open the possibility that corporate attestation may be accepted.

The Supreme Court has held *Auer* deference is "unwarranted" where to hold otherwise "would seriously undermine the principle that agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'" *See Christopher*, 132 S. Ct. at 2165–69 (alteration in the original); *see cf. Knapp*, 796 F.3d at 457–58 (reviewing a judicial officer's interpretation and citing favorably to *Christopher*). We conclude the same principle applies where an agency's interpretation of an ambiguous statute unfairly surprises a regulated party.

Thus, ESSG lacked fair notice, which alters the deference owed.[7] The I-9 Form did not clearly address corporate attestations, and the ALJ's new interpretation does not flow clearly from any authority in existence prior to this action. Thus, *Auer* and *Chevron* are inapplicable.

### 2. Skidmore *Deference*

Once deciding *Auer* deference is inappropriate, we follow *Christopher*'s course and apply *Skidmore* deference, which is "a measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those

---

[7] Arguably, further analysis is unnecessary because DHS's failure to give fair notice — on its own — justifies setting aside the imposed fine. In 2012, the Supreme Court set aside a fine imposed after concluding the regulated party lacked "sufficient notice prior to being sanctioned." *See F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2318–20 (2012). The parties have not briefed whether *Fox* is applicable to this case. Thus, we resolve this case on other grounds.

factors which give it power to persuade." *Christopher*, 132 S. Ct. at 2168–69 (quotation marks omitted) (citing *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)). Assuming that both the I-9 Form and the ALJ's opinion provide support for DHS's view that corporate attestation is prohibited, we find neither interpretation persuasive.

The I-9 Form is essentially silent on the issue. At best, the language of the attestation (e.g., "I attest" and "I have examined") shows that the agency contemplated a single person would complete all of Section 2 and sign the I-9. As already discussed, though, the I-9 includes other evidence that corporate attestation is permitted (e.g., defining "employer" broadly, and requiring a signature from an "Employer or Authorized Representative"). Even if the I-9 Form was intended to prohibit corporate attestation, we find the I-9 Form unpersuasive because it provides inconsistent clues as to its meaning and lacks the "hallmarks of thorough consideration." *See id.* at 2169. Further, an agency's statements are unpersuasive when they are "internally inconsistent" and "fail to provide clear direction to regulated parties . . . ." *Barboza v. Cal. Ass'n of Prof. Firefighters*, 799 F.3d 1257, 1268 (9th Cir. 2015) (citing *Christopher*, 132 S. Ct. at 2169)

The ALJ's interpretation, while not silent on the issue, is also unpersuasive. The ALJ's conclusion may have been logical, but like the I-9 Form it did not exhibit the "hallmarks of thorough consideration." *See Christopher*, 132 S. Ct. at 2169. In *Christopher*, the Supreme Court found unpersuasive an agency's interpretation because there had been "no opportunity for public comment . . . ." *Id.* In a more recent decision, the Supreme Court found unpersuasive an agency's interpretation of an issue on which the agency had previously been silent and where it failed to "explain the basis of its latest guidance." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352 (2015). Likewise, the ALJ's novel interpretation in this enforcement

No. 15-60173

action has not been subject to public comment, it addressed an issue the agency had never explicitly addressed prior to this enforcement action, and it relied strictly on commonsense rather than any legal authority.

Having concluded the agency has provided no persuasive interpretation, "we must employ traditional tools of interpretation" to resolve whether corporate attestation is prohibited. *See Christopher*, 132 S. Ct. at 2170; *see also Elgin Nursing & Rehab. v. U.S. Dep't of Health & Human Servs.*, 718 F.3d 488, 494 (5th Cir. 2013).

### 3. Textual Interpretation

We have already explained that the INA's requirement that a "person or *entity*" attest appears to permit corporate attestation. *See* 8 U.S.C. § 1324a(b)(1)(A). The relevant regulation similarly leaves open the possibility, requiring attestation by "an employer, his or her agent, or anyone acting directly or indirectly in the interest thereof . . . ." *See* 8 C.F.R. § 274a.2(b)(1)(ii)(B). The I-9 Form is also ambiguous, requiring a signature by the "Employer or Authorized Representative" and defining "employer" broadly.

In addition to those arguments already addressed, DHS argues that because the form requires the individual completing it to examine the documents presented and to attest that "the above-listed document(s) appear to be genuine and to relate to the employee named," the same individual must also see the employee as well as the original documents. Yet, ESSG does not deny that an in-person examination had to be conducted. It simply argues that its employee in Minnesota could properly rely on the report of the in-person examination conducted by its representative in Texas.

Taking into consideration all relevant legal authorities, we conclude the most reasonable interpretation permits corporate attestation. *See Christopher*, 132 S. Ct. at 2171. The most basic reason is that the statute

15

permits entity attestation, and nothing in the materials which ESSG had to consider prior to this enforcement action fairly informed the company that its procedures were invalid. We hold that, under the I-9 Form applicable in this enforcement action, corporate attestation was permissible. Thus, ESSG did not violate the law when one corporate representative in El Paso, Texas, examined original documents in the presence of the hired employee, and another corporate representative in Edina, Minnesota, inspected photocopies of the documents and completed Section 2 of the I-9 Form.

Our holding does not address whether DHS can lawfully prohibit corporate attestation. We also do not address whether the precedential decision the ALJ entered in this case could be the support for any subsequent enforcement actions. Finally, we agree that deciding the proper manner of attestation is a matter for the agency's discretion within the limits of the statute. We are simply holding that even if it is proper for DHS to prohibit corporate attestation, neither the applicable I-9 Form nor any other authoritative source clearly so stated prior to the ALJ's decision in this case.[8]

\* \* \*

We GRANT the petition for review and VACATE all portions of the ALJ's order brought before us.[9]

---

[8] Because we have held for ESSG, we do not address ESSG's "good faith" defense.

[9] We do not disturb the ALJ's unchallenged finding that ESSG failed to present an I-9 Form for one employee or the resulting fine of $981.75.