[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 16, 2011
JOHN LEY
CLERK

_____

No. 10-12990

_____

D.C. Docket No. 1:09-cv-03253-WSD

JOSE GARCIA SERRANO,

Plaintiff-Appellant,

versus

U.S. ATTORNEY GENERAL,
SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY,
ALEJANDRO MAYORKAS, Director,
U.S. Citizenship and Immigration Services,
DENISE FRAZIER,
Acting District Director of the Atlanta Office,
United States Citizenship and Immigration Services,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 16, 2011)

Before HULL and ANDERSON, Circuit Judges, and VINSON,* District Judge.

PER CURIAM:

Jose Garcia Serrano appeals the district court's judgment dismissing his petition for a writ of mandamus and his complaint seeking declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq. Serrano's complaint requested the district court to mandamus the defendants (1) to determine as a matter of law that Serrano has been "admitted" to the United States for purposes of his application for adjustment of status under 8 U.S.C. § 1255(a) and (2) to re-open and re-adjudicate Serrano's application for adjustment of status, which was previously denied. To be eligible for adjustment of status under 8 U.S.C. § 1255(a), an alien must be "inspected and admitted or paroled into the United States." Serrano contends that he does not have to meet § 1255(a)'s eligibility requirement because he was granted Temporary Protected Status under 8 U.S.C. § 1254a, and thus his application for adjustment of status was improperly denied. After review of the record and the benefit of oral argument, we conclude that the district court did not err in dismissing Serrano's petition and complaint, and therefore affirm.

---

*Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

# I. FACTUAL BACKGROUND

Serrano was born in El Salvador and is a citizen of that country.[1]  In 1996, he illegally entered the United States without being inspected and admitted or paroled.  Subsequently, he registered for Temporary Protected Status in 2001 and re-registered in 2006, 2008, and 2009.  In 2006, he married Olga Garcia, a U.S. citizen, and in 2008 she filed a Form I-130, Petition for Alien Relative, on his behalf.  At the same time, Serrano filed a Form I-485, seeking to adjust his status to lawful, permanent resident.

The Department of Homeland Security's U.S. Citizenship and Immigration Services ("DHS") denied Serrano's application for adjustment of status.  The DHS found that because Serrano illegally had entered the United States in 1996 without having been admitted or paroled following inspection by an immigration officer, he was not eligible for adjustment of status under 8 U.S.C. § 1255(a).

Challenging that DHS decision, Serrano filed, in the district court, a lawsuit seeking mandamus as well as declaratory and injunctive relief.  He contended that 8 U.S.C. § 1254a(f)(4) alters the admission requirements set forth in 8 U.S.C.

---

[1]There is inconsistency in the record about Serrano's citizenship.  Serrano's complaint asserted that he is a citizen of Mexico, but his initial brief to this Court states that he is a citizen of El Salvador.  It is not relevant to the outcome of this case, but we will assume for purposes of this opinion only that Serrano is a citizen of El Salvador.

§ 1255(a), allowing him to adjust his status to lawful permanent resident based on his current Temporary Protected Status. The district court denied Serrano's mandamus request, concluding that he has a legal remedy under the Administrative Procedure Act. The court also denied his request for declaratory and injunctive relief, determining that § 1254a(f)(4) does not alter the plain language of § 1255(a), which expressly limits eligibility for adjustment of status to an alien who has been "inspected and admitted or paroled." The court further found that, even if § 1255(a) is ambiguous, the agency's interpretation was entitled to Skidmore deference. See Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 164 (1944).

## II. MANDAMUS RELIEF

We review de novo a district court's decision about whether it has subject matter jurisdiction to grant mandamus relief. See Cash v. Barnhart, 327 F.3d 1252, 1255 n.4 (11th Cir. 2003). A district court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an extraordinary remedy available only in the clearest and most compelling of cases. Cash, 327 F.3d at 1257. Mandamus is appropriate only if (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate

4

remedy is available.  Id. at 1258.  The party seeking mandamus has the burden of demonstrating that his right to the writ is clear and indisputable.  In re BellSouth Corp., 334 F.3d 941, 953 (11th Cir. 2003).

Serrano cannot satisfy the requirements for mandamus relief.  He has not demonstrated that he lacks an adequate alternative remedy for obtaining relief.  See Cash, 327 F.3d at 1258.  In fact, Serrano has sued under the APA, which provides an adequate remedy.  See 5 U.S.C. § 706 (providing for judicial review of final agency actions and stating that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and . . . shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  Because Serrano has an adequate remedy available to him, the district court properly dismissed his request for mandamus relief.  See Cash, 327 F.3d at 1258; see also Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1268 (11th Cir. 2011) ("The availability of relief under the Administrative Procedure Act . . . forecloses a grant of a writ of mandamus.").

## III. STATUTORY CONSTRUCTION

We review de novo questions of statutory interpretation.  Bankston v. Then, 615 F.3d 1364, 1367 (11th Cir. 2010).  Courts may, under the Administrative

Procedure Act, review an agency's interpretation of a statute. 5 U.S.C. § 706. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43, 104 S. Ct. 2778, 2781 (1984). "The first step of statutory construction is to determine whether the language of the statute, when considered in context, is plain. If the meaning of the statutory language in context is plain, we go no further." Wachovia Bank, N.A. v. United States, 455 F.3d 1261, 1267 (11th Cir. 2006) (citation omitted).

Section 1255(a) of Title 8 of the U.S. Code authorizes the Secretary of Homeland Security to adjust the "status of an alien who was inspected and admitted or paroled into the United States . . . to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."[2] 8 U.S.C. § 1255(a); see also

---

[2]Section 1255(a) provides that "the Attorney General" is the government official with the authority to adjust status, "but Congress has transferred the adjudication functions of the former Immigration and Naturalization Service (INS) to the Secretary of Homeland Security and his delegate" at the U.S. Citizenship and Immigration Services. Scheerer v. U.S. Att'y Gen., 513 F.3d 1244, 1251 n.6 (11th Cir. 2008).

Scheerer v. U.S. Att'y Gen., 445 F.3d 1311, 1321 (11th Cir. 2006) (recognizing that 8 U.S.C. § 1255(a) "grants eligibility to adjust status to any alien 'who was inspected and admitted or paroled into the United States'" (emphasis omitted)). Stating the same principle in terms of ineligibility, a relevant regulation provides that "[t]he following categories of aliens are ineligible to apply for adjustment of status . . . (3) Any alien who was not admitted or paroled following inspection by an immigration officer." 8 C.F.R. § 245.1(b)(3).

Under 8 U.S.C. § 1254a, Temporary Protected Status may be conferred on an alien who is a national of a foreign state that the Secretary of the Department of Homeland Security has designated for inclusion in the Temporary Protected Status program. See 8 U.S.C. § 1254a(a)(1). Foreign states are selected for that program based on certain conditions in the country, such as ongoing armed conflict, an environmental disaster, or some other extraordinary and temporary condition.[3] See id. § 1254a(b)(1). An alien who is granted Temporary Protected Status is not subject to removal "from the United States during the period in which such status is in effect," is authorized to engage in employment in the United States, and is

[3]Like the adjustment of status statute, the statute that applies to Temporary Protected Status refers to the Attorney General as the decision maker, but the authority to designate countries for inclusion in the Temporary Protected Status program and for adjudicating the eligibility of individual applicants has been transferred to the Secretary of the Department of Homeland Security and the district directors at the U.S. Citizenship and Immigration Services. Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 562 F.3d 1137, 1140 n.3 (11th Cir. 2009).

provided documentation of that authorization. Id. § 1254a(a). The statute also provides: "During a period in which an alien is granted temporary protected status under this section . . . (4) for purposes of adjustment of status under section 1255 of this title . . ., the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." Id. § 1254a(f)(4).

Serrano argues that § 1254a(f)(4) alters the "inspected and admitted or paroled" limitation on eligibility for adjustment of status under § 1255(a). We disagree. The plain language of § 1255(a) limits eligibility for status adjustment to an alien who has been inspected and admitted or paroled.[4] Id. § 1255(a). That an alien with Temporary Protected Status has "lawful status as a nonimmigrant" for purposes of adjusting his status does not change § 1255(a)'s threshold

---

[4]We recognize that Serrano relies on United States v. Orellana, 405 F.3d 360 (5th Cir. 2005), but that decision fails to support his argument. Orellana addresses the "sole question . . . [of] whether an alien who enters the United States without inspection and subsequently receives TPS is 'illegally or unlawfully in the United States' under section [18 U.S.C.] § 922(g)(5)(A)." Id. at 362. The court noted:

> Technically, Orellana was not eligible for TPS because he had entered the country without inspection and was inadmissible at the time of his application. However, Orellana disclosed his illegal entry on his TPS application, and this application was subsequently granted. This raises an inference that Orellana's inadmissibility was waived by the Attorney General.

Id. at 363 n.8 (citation omitted). Serrano does not assert that he disclosed his illegal entry into the United States on his application for Temporary Protected Status. Furthermore, the Orellana court was not addressing the interaction of § 1254a(f)(4) with the plain language of § 1255(a) but instead was deciding only the issue of whether an alien with temporary protected status can be convicted of violating 18 U.S.C. § 922(g)(5)(A). See id. at 362. Anything the Orellana opinion says about adjustment of status is dicta.

requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled. Accordingly, the district court's ruling is consistent with the plain language of the statute.

Furthermore, to the extent Serrano contends that the statutory language is ambiguous, Serrano's claim still fails because the INS, the predecessor to the DHS, has interpreted § 1255(a) and § 1254a(f)(4) in the same way as we do above. See Genco. Op. No. 91-27, 1991 WL 1185138 (INS Mar. 4, 1991) (concluding that an alien who entered the United States without inspection is ineligible for adjustment of status under § 1255, even if granted Temporary Protected Status under § 1254a); Genco. Op. 93-94, 1993 WL 1504041 (INS Dec. 28, 1993) (concluding that an alien who entered the United States without inspection is eligible to change his nonimmigrant status under 8 U.S.C. § 1258, but noting that, unlike § 1255, § 1258 does not require inspection or admission).

We conclude that these DHS interpretations enjoy deference under Skidmore, which holds that "a non-binding administrative interpretation carries a weight dependent upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Quinchia v. U.S. Att'y Gen., 552 F.3d 1255, 1259 (11th Cir. 2008). In other

words, even if the statutory language is ambiguous, we defer to the DHS's consistent and well-reasoned interpretation of the interplay between § 1255(a) and § 1254a(f)(4).[5]

**AFFIRMED.**

---

[5]The appellees also note that Serrano's interpretation of § 1254a(f)(4) would render superfluous § 1254a(h), which requires a three-fifths super-majority before the Senate may consider any bill, resolution, or amendment that allows aliens with Temporary Protected Status to adjust to lawful or permanent resident alien status. As the appellees note, Congress's recognition of the possibility of special legislation to allow an alien granted Temporary Protected Status to adjust his status further bolsters the DHS's interpretation of the statutes here.