PER CURIAM:
This appeal presents an issue of statutory interpretation arising from the Cuban Adjustment Act of 1966 (CAA), Pub.L. No. 89-732, 80 Stat. 1161 (reproduced as a historical note to 8 U.S.C. § 1255). Camila Silva-Hernandez contends that the pattern and practice delineated in Section 23.11(m)(2) of the United States Citizenship and Immigration Services (Immigration Service) Adjudicator’s Field Manual violates the plain and unambiguous language of the CAA. Section 23.11(m)(2) dictates that the lawful permanent resident status of a non-Cuban spouse cannot predate the date of the non-Cuban spouse’s marriage to a Cuban national. After reviewing the statutory language, we conclude the Immigration Service’s pattern and practice of limiting the date of lawful permanent residence based on the date of marriage is contrary to the unambiguous language of the CAA.
I. BACKGROUND
The relevant facts are undisputed. Silva-Hernandez is a native and citizen of Brazil. On December 20, 2001, Silva-Hernandez was admitted to the United States as a B-2 nonimmigrant visitor for pleasure, and overstayed her visa. On August 27, 2010, she married Eduardo Hernandez, a native and citizen of Cuba who had adjusted his status to lawful permanent resident under the CAA, and has been a permanent resident since April 9, 2000.
On October 5, 2010, Silva-Hernandez filed an application for adjustment of status under the CAA based on her marriage to Hernandez. On February 10, 2011, the Immigration Service approved Silva-Hernandez’s application. In approving her ap *359 plication, the Immigration Service recorded her lawful permanent resident status as of August 27, 2010, the date of her marriage, as provided in the Immigration Service Adjudicator’s Field Manual.
Silva-Hernandez filed a Complaint against the Immigration Service[1] seeking (1) an order declaring that the Immigration Service’s legal position and practice regarding the rollback date for non-Cuban spouses and children violates the plain and unambiguous language of Section 1 of the CAA and is an error of law, as well as arbitrary and capricious; (2) an order declaring that the Immigration Service’s refusal to create a record of Silva-Hernandez’s admission for permanent residence as of a date thirty months prior to the filing of her adjustment application or the date of her last arrival into the United States (whichever date is later) is an error of law, and arbitrary and capricious; (3) an order in the form of a writ of mandamus compelling the Immigration Service to create nunc pro tunc a record of Silva-Hernandez’s admission for permanent residence as of April 5, 2008 (i.e., the date thirty months prior to the filing of her adjustment application) and immediately issue her a new/corrected Permanent Resident Card indicating a “Resident Since” date of April 5, 2008; .and (4) an order granting an injunction barring the Immigration Service from applying the “rule” or “policy” delineated in Section 23.11(m)(2) of the Immigration Service’s Adjudicator’s Field Manual regarding the rollback provisions for non-Cuban spouses and children.
The parties filed competing motions for summary judgment. In granting the Immigration Service’s motion for summary judgment and denying Silva-Hernandez’s motion for summary judgment, the district court found that Section 1 of the CAA was ambiguous regarding whether a non-Cuban spouse is entitled to a “rollback date” prior to the date of the qualifying marriage. The district court concluded the CAA does not contain explicit language stating that non-Cuban spouses are entitled to benefits arising prior to the date of the qualifying marriage. Further, the district court found the statute presupposes the existence of a marital relationship. Silva-Hernandez v. Swacina, 827 F.Supp.2d 1352, 1357 (S.D.Fla.2011).
The district court then turned to the legislative history of the CAA to determine Congress’s intent, and found that “a literal application of the CAA’s spousal and rollback provisions, ... would yield results that are absurd in light of their legislative intent.” Id. at 1360. The court concluded Section 23.11(m)(2) of the Immigration Service Adjudicator’s Field Manual was based on a permissible construction of the statute, and was an interpretive rule entitled to judicial deference. Id. at 1361-64.
On appeal, Silva-Hernandez asserts Section 1 of the CAA is not ambiguous. The statute states, in what is known as the “rollback provision,” that “[u]pon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien’s admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later.” Pub.L. No. 89-732, § 1, 80 Stat. 1161, 1161 (as amended) (reproduced as a historical note to 8 U.S.C. § 1255). The very next sentence provides: “The provisions of this Act shall be applicable to the spouse and child *360 of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States ____” Id. Silva-Hernandez asserts our inquiry starts and stops with reading these sentences, as they unambiguously state that Congress intended the rollback provision be applied to spouses and children of Cuban nationals, no matter their nationality or citizenship. Thus, the Immigration Service’s pattern and practice of limiting the date of lawful permanent resident status of a non-Cuban spouse based on the date of the non-Cuban spouse’s marriage to the Cuban national violates the plain and unambiguous language of the CAA.
The Immigration Service does not argue that any particular term in the statute is ambiguous or has multiple meanings.[2] Rather, the Immigration Service hinges its argument on its assertion that the plain meaning of the CAA yields absurd results. Specifically, the Immigration Service asserts that Silva-Hernandez’s interpretation would accord a non-Cuban spouse benefits to which the non-Cuban spouse is not otherwise entitled — rollback to a date on which the non-Cuban spouse was not qualified for application under the CAA. Further, according to the Immigration Service, the non-Cuban spouse could receive an earlier adjustment date than the Cuban alien upon whom the non-Cuban spouse’s application is based.
II. LANGUAGE OF STATUTE AND ADJUDICATOR’S FIELD MANUAL
Before we begin our discussion of the issue presented, we must first set out the relevant language of the statute and Adjudicator’s Field Manual provision.

A. The Statute

Section 1 of the CAA provides, in pertinent part:
That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien’s admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later. The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States, except that such spouse or child who has been battered or sub *361 jected to extreme cruelty may adjust to permanent resident status under this Act without demonstrating that he or she is residing with the Cuban spouse or parent in the United States.
Pub.L. No. 89-732, § 1, 80 Stat. 1161, 1161 (as amended) (reproduced as a historical note to 8 U.S.C. § 1255).

B. Immigration Service Adjudicator’s Field Manual Section 2S.11

Section 23.11(m)(2) of the Immigration Service Adjudicator’s Field Manual provides:
The non-Cuban spouse and children of a qualifying Cuban applicant are entitled to the same rollback provisions as the principal alien. However, their rollback date cannot precede the date of the qualifying marriage. Although this rule has been adopted as a matter of policy, it has no basis in statute or regulation. Rather, it is an application of the general principle that a benefit cannot accrue to an alien before eligibility exists.
III. DISCUSSION
The issue before us is whether the Immigration Service’s pattern and practice, provided for in its Adjudicator’s Field Manual, of limiting a non-Cuban spouse’s “rollback date” to the date of marriage, rather than recording a date thirty months prior to the non-Cuban spouse’s filing of the application for adjustment of status (or the date of the non-Cuban spouse’s arrival in the United States, whichever is later), violates the plain language of the CAA. We review de novo the district court’s grant of summary judgment on this issue. Durr v. Shinseki, 638 F.3d 1342, 1346 (11th Cir.2011). We also “review de novo questions of statutory interpretation.” Serrano v. U.S. Att’y Gen., 655 F.3d 1260, 1264 (11th Cir.2011).

A. Plain Meaning of the Statute

When reviewing an agency’s construction of a statute which it administers, we first determine whether Congress has directly spoken to the question at issue. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). “If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.” Id. at 842-43, 104 S.Ct. 2778.
In order to determine whether the intent of Congress is clear, we must employ traditional tools of statutory construction. See id. at 843 n. 9, 104 S.Ct. 2778. “As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear.” Harry v. Marchant, 291 F.3d 767, 770 (11th Cir.2002) (en banc). When we construe a statute, “we must begin, and often should end as well, with the language of the statute itself.” Id. (quotations omitted). This is because “we presume that Congress said what it meant and meant what it said.” Id. (quotations omitted). “Those who ask courts to give effect to perceived legislative intent by interpreting statutory language contrary to its plain and unambiguous meaning are in effect asking courts to alter that language, and courts have no authority to alter statutory language.... We cannot add to the terms of the provision what Congress left out.” CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1228 (11th Cir.2001) (quotations and alterations omitted).
This case turns on the interpretation of the first three sentences of Section 1 of the CAA. We will analyze each sentence in turn, and as they relate to one another, to *362 determine whether the meaning of the statute is plain and unambiguous.
The first sentence states:
That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.
The language of this sentence is not ambiguous. The Attorney General has discretion to adjust the status of any alien who is a native or citizen of Cuba who has been inspected and admitted or paroled into the United States after January 1, 1959, and has been present in the United States for at least one year, if the alien applies for adjustment and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.
The next sentence, the “rollback provision,” states:
Upon approval of such an application for adjustment of status, the Attorney General shall create a record of the alien’s admission for permanent residence as of a date thirty months prior to the filing of such an application or the date of his last arrival into the United States, whichever date is later.
Again, the language of this sentence is not ambiguous. Upon the Attorney General’s decision to exercise discretion to adjust the native or citizen of Cuba’s status to that of a lawful permanent resident, the Attorney General shall create a record of the alien’s admission as of a date thirty months prior to the filing of the application, or the date of his last arrival into the United States, whichever is later.
Finally, the last sentence states:
The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States, except that such spouse or child who has been battered or subjected to extreme cruelty may adjust to permanent resident status under this Act without demonstrating that he or she is residing with the Cuban spouse or parent in the United States.
This sentence is also not ambiguous. The provisions of the CAA shall be applicable to the spouse and child of any alien described in this subsection. The alien described in this subsection is the one who was unambiguously described in the first sentence. Thus, if you are married to, or a child of, the alien described in the first sentence, and you are residing in the United States with the alien described in the first sentence, see Gonzalez v. McNary, 980 F.2d 1418, 1420 (11th Cir.1993), the CAA shall be applicable to you, regardless of your citizenship or place of birth. And one of the provisions of the CAA that shall apply is the rollback provision. This is clear from the language and structure of the statute. The third sentence of Section 1 makes the “provisions” of the CAA applicable to non-Cuban spouses and children. The rollback provision, which appears in the immediately preceding sentence of Section 1, is clearly a provision of the CAA.
*363 The unambiguous language of Section 1 of the CAA supports that a non-Cuban spouse of a Cuban whose status has been adjusted under the CAA should have a recorded date of lawful permanent residence of thirty months prior to the application date or the date of the non-Cuban spouse’s last arrival into the United States, whichever date is later. Importantly, the statute contains no language stating the non-Cuban must be married to the Cuban as of the non-Cuban’s rollback date, nor does it state the Cuban and non-Cuban spouse must enter the United States simultaneously. “We cannot add to the terms of the provision what Congress left out.” CBS, 245 F.3d at 1228 (quotations and alteration omitted).
‘Where the language of a statute is unambiguous, as it is here, we need not, and ought not, consider legislative history.” Harry, 291 F.3d at 772. “The ‘plain’ in ‘plain meaning’ requires that we look to the actual language used in a statute, not to the circumstances that gave rise to that language.” CBS, 245 F.3d at 1224. Our decisions “mandat[e] that ambiguity in statutory language be shown before a court delves into legislative history.” Id. Thus, because we conclude the statute is clear, the parties’ arguments regarding the legislative history of the CAA are not relevant to our plain meaning analysis, and we will not address them here.

B. Absurd Result

This Court’s one recognized exception to the plain meaning rule is absurdity of results. CBS, 245 F.3d at 1228. We have observed, “[t]hough venerable, the principle is' rarely applied, because the result produced by the plain meaning canon must be truly absurd before this principle trumps it. Otherwise, clearly expressed legislative decisions would be subject to the policy predilections of judges.” Merritt v. Dillard Paper Co., 120 F.3d 1181, 1188 (11th Cir.1997). “[I]t is irrelevant that we may not have made the same policy decision had the matter been ours to decide if we cannot say that it is absurd, ridiculous, or ludicrous for Congress to have decided the matter in the way the plain meaning of the statutory language indicates it did.” CBS, 245 F.3d at 1228 (quotations and alterations omitted).
The Immigration Service attempts to show the absurdity of the plain meaning of the CAA in two ways. First, it points to the CAA’s legislative history; and second, it presents various hypothetical scenarios resulting from the plain meaning in which it contends the theoretical outcomes would be absurd.
The Immigration Service relies on the legislative history indicating that the spousal provision was added to promote “family unity”[3] to show absurd results. See Gonzalez, 980 F.2d at 1421 (“The pur *364 pose of the [CAA’s] provision permitting a spouse and child of a Cuban alien to obtain permanent residence is to promote family unity.”). The legislative history is silent, however, on the issue of the assignment of a rollback date for a non-Cuban spouse who marries a Cuban national after the Cuban national is given permanent resident status. Despite this silence, the articulated legislative intent of family unity is furthered by giving the earlier rollback date to a non-Cuban spouse, as the non-Cuban spouse could get a jump start on his or her path to naturalization. Not only is the plain meaning of the statute not absurd, it arguably furthers the legislative intent of family unity.
The Immigration Service presents several hypothetical scenarios in which a non-Cuban spouse is given “greater” benefits than the Cuban national in order to show the plain meaning of the statute could yield absurd results. The examples involve the non-Cuban spouse receiving an earlier rollback date than the Cuban national, and a non-Cuban spouse receiving a rollback date preceding the Cuban’s presence in the United States, potentially to a date when the Cuban national was married to someone else. The Immigration Service argues “[tjhese outcomes, resulting from a ‘literal reading’ of the CAA, would be absurd because the non-Cuban spouse would be receiving benefits of the CAA to which the Cuban spouse would not be accorded.” Further, the literal interpretation “would give no credence to the statutory intent of ‘family unity’ because non-Cuban spouses would be provided retroactive benefits before a ‘family’ ever existed.”
We are not convinced the Immigration Service’s hypothetical scenarios demonstrate absurd results, as the “rollback provision” in the CAA is a special benefit carved out for Cuban nationals. Congress gave Cubans this special benefit, and giving a non-Cuban spouse (no matter the date of marriage) the same benefit is no more absurd than giving Cubans this special benefit. If Congress carved out this provision for Cuban nationals, there is no reason why Congress cannot treat the spouse of a Cuban national the same way. Even if a particular application of the rollback formula may lead to an arguably anomalous result (such as granting permanent resident status to a non-Cuban applicant as of an earlier date than the Cuban spouse), we cannot say that Congress could not have intended to apply a uniform rollback formula to all applicants, Cuban and non-Cuban alike. Indeed, there is nothing absurd about using a single rollback formula for all CAA applicants, if only for greater ease of administration.
In light of our “exacting standard” for finding absurdity, we conclude the Immigration Service has not shown that the plain meaning of Section 1 of the CAA would yield “the type of truly absurd or ludicrous results which would permit us to depart from the plain meaning of the statute.” See CBS, 245 F.3d at 1228-29.
IV. CONCLUSION
As we conclude that the language of the statute is not ambiguous and does not yield absurd results, we have answered the necessary Chevron question,[4] whether Congress has directly spoken to the precise question at issue, in the affirmative. The Immigration Service Adjudicator’s Field Manual provision providing that a non-Cuban spouse’s rollback date cannot *365 precede the date of the qualifying marriage is contrary to the unambiguously expressed intent of Congress. Thus, we reverse the district court and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. Silva-Hernandez’s Complaint was brought against the U.S. Bureau of Citizenship and Immigration Services, Miami, Florida; U.S. Attorney General; Secretary for the Department of Homeland Security; U.S. Citizenship and Immigration Services; and National Benefits Center, U.S. Citizenship and Immigration Services. For ease of reference, we refer to the Immigration Service as the opposing party throughout the opinion.

. In fact, the Immigration Service devotes only two sentences in its brief to any argument that the statute is ambiguous. The Immigration Service states that “Congressional intent is ambiguous as it relates to whether derivative non-Cuban spouses are entitled to benefits backdated to before the date of the qualifying marriage.” It further contends: "CAA Section 1 does not contain explicit language stating that non-Cuban spouses are entitled to benefits arising prior to the date of the qualifying marriage.” This is the extent of the Immigration Service’s argument that the statute is ambiguous.

. See H.R.Rep. No. 89-1978, at 5-9 (1966), reprinted in 1966 U.S.C.C.A.N. 3792 at 3799 (August 4, 1966, letter of Deputy Att’y Gen; Ramsey Clark) (suggesting the CAA’s spousal provision was included ”[i]n order to maintain the unity of the family ... to provide for the adjustment of status thereunder of the spouse and children of the Cuban who is the principle beneficiary of this bill, regardless of their nationality and nativity, if they are living with him in the United States"); Adjustment of Status for Cuban Refugees: Hearing on H.R. 15182, H.R. 15183, H.R. 16908, H.R. 10808, and H.R. 13393 Before Subcomm. No. 1 of the H. Comm, on the Judiciary, 89th Cong., 36, 40 (1966) ("I think the Congress took a very strong position in the law last year as to reuniting families.” (statement of Nicholas deB. Katzenbach, Att’y Gen. of the United States)), ("I think that this proposition to reunite families is in a humane direction.” (statement of Rep. Peter W. Rodino, Jr., Member, Subcomm. No. 1 of the H. Comm, on the Judiciary)).

. Because we conclude the statute is not ambiguous and the agency’s construction is contrary to Congress’s intent, we need not address the parties' arguments regarding the type of deference afforded to the Immigration Service’s interpretation of the statute. See Chevron, 467 U.S. at 843, 104 S.Ct. at 2782.