[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10445
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-21525-JLK

MIGUEL DURON,

Plaintiff-Appellant,

versus

DIRECTOR ENID STUL,
USCIS Hialeah Field Office, Field Office Director,

Defendant,

DISTRICT DIRECTOR LINDA SWACINA,
U.S. Citizenship and Immigration Service Miami District Director,
UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, USCIS,
USCIS HIALEAH FIELD OFFICE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 14, 2018)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Miguel Duron, a native and citizen of Honduras, appeals the district court's order dismissing his complaint filed pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, and the Declaratory Judgment Act, 28 U.S.C. § 2201, against Defendants Linda Swacina and Enid Stulz, Miami District Director and Hialeah Field Office Director at the United States Citizenship and Immigration Services, respectively. In his complaint, Plaintiff sought a declaration that the United States Citizenship and Immigration Services's ("the Immigration Service") denial of his application for adjustment of status to that of a lawful permanent resident—based on its determination that he was ineligible under 8 U.S.C. § 1255(c)(2) for failing to maintain continuously a lawful status since entry into the United States—was arbitrary, capricious, and otherwise not in accordance with the law. On appeal, Plaintiff argues that his grant of temporary protected status ("TPS") overcomes § 1255(c)(2)'s bar on adjustment of status for aliens who have failed to maintain continuously a lawful status since entry into the United States. After careful review, we affirm.

2

## I.    BACKGROUND

### A.    FACTS

The relevant facts are not in dispute.  Plaintiff, a native and citizen of Honduras, entered the United States without inspection in December 1997.  On January 5, 1999, following a hurricane in Honduras, the Secretary for the Department of Homeland Security[1] designated Honduras for inclusion in the TPS program.  A foreign state is designated for inclusion in the TPS program  if "certain conditions exist in [the] country . . .  including the occurrence of an environmental disaster, that results 'in a substantial, but temporary, disruption of living conditions in the area affected.'"  *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1140 (11th Cir. 2009).  An alien granted TPS is not subject to removal from the United States during the period in which that status is in effect and is also entitled to work authorization during that time.  8 U.S.C. § 1254a(a)(1).

Plaintiff applied for TPS on August 12, 1999.  The Immigration Service granted his application on April 7, 2000.  In 2001, Plaintiff married a lawful permanent resident.  Shortly thereafter, Plaintiff's wife filed a Form I-130, Alien Relative Petition on his behalf, which was approved in 2006.

---

[1]  "Although the statute governing TPS refers to the Attorney General as the decisionmaker, the authority to designate countries for inclusion in the TPS program and for adjudicating the eligibility of individual applicants for TPS has been transferred to the Secretary of the Department [of Homeland Security] and the district directors at [the Immigration Service]." *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009).

After requesting and receiving advanced parole through the TPS program, Plaintiff traveled abroad on December 6, 2014.  On December 13, 2014, he was paroled back into the United States and resumed his temporary protected status.

On February 5, 2015, Plaintiff filed an application for adjustment of status based on his marriage to a lawful permanent resident.  The Immigration Service denied his application, concluding that he was barred from adjustment of status because he failed to maintain continuously a lawful status since his entry into the United States as required under 8 U.S.C. § 1255(c)(2).  The Immigration Service explained that Plaintiff was without lawful immigration status from the time he entered the United States in 1997 until he applied for TPS in August 1999.  Although he departed and was subsequently paroled back into the United States in 2014, this did not cure his failure to continuously maintain a lawful status in the United States since his arrival in 1997.

## B.    Procedural History

In April 2016, Plaintiff filed a complaint against Defendants seeking review of the denial of his application for adjustment of status and a declaration that the Immigration Service's determination that he was ineligible for adjustment of status was arbitrary and capricious.  Defendants moved to dismiss Plaintiff's complaint for failure to state a claim.

4

The district court granted Defendants' motion, concluding that Plaintiff was statutorily barred from adjustment of status under the plain language of 8 U.S.C. §§ 1254a(f)(4) and 1255(c)(2) because he could not show that he maintained continuously a lawful status since his entry into the United States in 1997. Although an alien with TPS is considered as "being in, and maintaining, lawful status" pursuant to § 1254a(f)(4), the court determined that this lawful-status benefit was limited to the time period that the alien has TPS.  Because the lawful-benefit status did not apply to the time period prior to the grant of TPS, the court determined that Plaintiff was not eligible for adjustment of status because he had failed to maintain continuously a lawful status since his entry into the United States in 1997.   Thus, the district court determined that the Immigration Service's denial of Plaintiff's application was consistent with the plain language of §§ 1254a and 1255.

Alternatively, the district court concluded that even if §§ 1254a and 1255 were ambiguous, the Immigration Service's decision was entitled to deference because it was validly reasoned and consistent with the agency's and the Board of Immigration Appeals's decisions regarding the interpretation of §§ 1254a and 1255.  Accordingly, the district court granted Defendants' motion and dismissed Plaintiff's complaint.

## II.    DISCUSSION

### A.    Standard of Review

We review the district court's grant of a motion to dismiss *de novo*, and in doing so, we view all allegations in the complaint as true and construe them in the light most favorable to the Plaintiff.  *Perez v. U.S. Bureau of Citizenship and Immigration Servs.*, 774 F.3d 960, 964 (11th Cir. 2014).  We review issues involving statutory interpretation *de novo*.  *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1264 (11th Cir. 2011).

Under the Administrative Procedure Act, a court may review an agency's interpretation of a statute and set aside an agency action or conclusion that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  5 U.S.C. § 706; *see also Serrano*, 655 F.3d at 1264 ("Courts may, under the Administrative Procedure Act, review an agency's interpretation of a statute.").  When reviewing an agency's construction of a statute, we first look to "whether Congress has directly spoken to the precise question at issue."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  "If the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case,' and 'the statutory scheme is coherent and consistent,' the inquiry is over."  *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009).

6

### B.    Applicable Law

In order to adjust status to that of a lawful permanent resident, an alien must: (1) have been inspected and admitted or paroled into the United States; (2) made an application for adjustment of status; (3) be eligible to receive an immigrant visa and be admissible to the United States for permanent residence; and (4) have an immigrant visa immediately available to him at the time the application is filed. 8 U.S.C. § 1255(a).  This appeal does not concern the adjustment-of-status eligibility requirements set forth in § 1255(a), as the district court noted "[i]t is undisputed that Plaintiff satisfies the threshold requirements of § 1255(a)."[2] Instead, the parties' arguments focus on the portion of the statute providing that adjustment of status under § 1255 is not available to "an alien (other than an immediate relative as defined in section 1151(b) . . . of this title) who . . . has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States."  8 U.S.C. § 1255(c)(2).

As noted above, aliens granted TPS receive certain benefits—such as work authorization and not being subject to removal during the time period in which the status is in effect.  8 U.S.C. § 1254a(a).  In addition to these benefits, the statute

---

[2]  Indeed, the Government asserted before the district court that Plaintiff's 2014 parole into the United States satisfied § 1255(a)'s requirement that an alien demonstrate that he has been "inspected and admitted or paroled" into the United States.

also provides that:  "[d]uring a period in which an alien is granted [TPS] under this section[,] for purposes of adjustment of status . . . and change of status . . . , the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant."  8 U.S.C. § 1254a(f)(4).

### C.    Plaintiff's Grant of TPS Does Not Overcome § 1255(c)(2)'s Eligibility Bar for Adjustment of Status

Plaintiff argues that he is eligible for adjustment of status because the lawful-status benefit provided to TPS grantees pursuant to § 1254a(f)(4) cures any prior ineligibility for failure to maintain continuously a lawful status under § 1255(c)(2).  As the district court noted, it is undisputed that Plaintiff entered the United States without inspection in 1997 and resided unlawfully prior to his grant of TPS in 2000.  The outcome of this case, therefore, turns on whether the lawful-status benefit under § 1254a(f)(4) overrides § 1255(c)(2)'s bar to adjustment of status if the alien failed to maintain continuously a lawful status since entry into the United States.  In other words, does Plaintiff's subsequent receipt of TPS status nullify his prior unlawful status?  We conclude that it does not.

To answer this question, we need not look further than the plain and unambiguous language of the statute, which establishes that the lawful-status benefit for TPS grantees set forth in § 1254a(f)(4) applies only to the time period in which an alien has TPS.  Contrary to Plaintiff's contentions, the prefatory phrase "during a period in which an alien is granted temporary protective status" is a

8

temporal qualifier for the lawful-status benefit under § 1254a(f)(4).  Indeed, the

statute provides:

> During a period in which an alien is granted temporary protected status under this section—
>
> (1) the alien shall not be considered to be permanently residing in the United States under color of law;
>
> (2) the alien may be deemed ineligible for public assistance by a State . . . ;
>
> (3) the alien may travel abroad with the prior consent of the Attorney General; and
>
> (4) for purposes of adjustment of status under section 1255 . . . the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

8 U.S.C. § 1254a(f)(1)-(4).  Reading the statute as a whole, it is clear that the

prefatory language applies to each of the parallel phrases set forth in § 1254a(f).

*Cf. Parm v. Nat'l Bank of Cal., Nat'l Ass'n*, 835 F.3d 1331, 1336 (11th Cir. 2016)

(noting that "[w]hen the syntax involves something other than a parallel series of

nouns or verbs, a prepositive or postpositive modifier normally applies to only the

nearest reasonable referent").

Because "we presume that Congress said what it meant and meant what it

said," we conclude that the lawful-status benefit applies only to the period of time

in which the alien has TPS, not to any prior period of unlawful status.  *Silva-*

*Hernandez v. U.S. Bureau of Citizenship and Immigration Servs.*, 701 F.3d 356,

9

362 (11th Cir. 2012) (quotations omitted); *see also Warshauer*, 577 F.3d at 1335 (explaining that to determine whether a statute is plain and unambiguous, we look to "the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.").

Plaintiff argues that this interpretation of the interplay between § 1254a(f)(4) and § 1255(c)(2) renders § 1254a(f)(4) meaningless, given our holding in *Serrano v. United States Attorney General*, 655 F.3d 1260 (11th Cir. 2011). *See Legal Envtl. Assistance Found., Inc. v. U.S. E.P.A.*, 276 F.3d 1253, 1258 (11th Cir. 2001) ("[I]t is an elementary principle of statutory construction that, in construing a statute, we must give meaning to all the words in the statute."). In *Serrano*, we determined that the benefits conferred on TPS grantees under § 1254a(f)— specifically, that an alien granted TPS is considered as "being in, and maintaining, lawful status"—does not satisfy § 1255(a)'s requirement that an alien must be "inspected and admitted or paroled" in order to adjust status to that of a lawful permanent resident. *Serrano*, 655 F.3d at 1260. The crux of Plaintiff's argument is that if § 1254a(f)(4)'s lawful-status benefit does not permit an alien to establish that he has been "inspected and admitted or paroled" under § 1255(a), then it must enable an alien to overcome § 1255(c)(2)'s eligibility bar. If it does not, then according to Plaintiff, the lawful-status benefit would have no purpose within the statute.

10

We are not persuaded.  As the Government correctly points out, Plaintiff's argument does not account for the fact that, although § 1254a(f)(4) does not benefit Plaintiff, there are situations where the statutory provision would apply.  Section 1254a(f)(4) would apply in a situation where an alien has lawful nonimmigrant status in the United States based on, for example, a visitor or student visa, and subsequently receives TPS prior to expiration of that lawful nonimmigrant status. If that same alien later seeks to adjust his status based on his marriage to a lawful permanent resident, he would "be considered as being in, and maintaining, lawful status" by operation of § 1254a(f)(4), regardless of whether he had overstayed his visitor or student visa.[3]  *See* 8 U.S.C. § 1254a(f)(4).

In short, because Plaintiff resided unlawfully in the United States from 1997 until he was granted TPS in 2000, he is ineligible for adjustment of status based on his failure "to maintain continuously a lawful status since entry into the United States."  *See* 8 U.S.C. § 1255(c)(2).  Given that Plaintiff was ineligible for adjustment of status, the Immigration Service's denial of his application was not

---

[3]  The § 1255(c)(2) eligibility bar does not apply to aliens considered to be immediate relatives under 8 U.S.C. § 1151(b) or special immigrants under 8 U.S.C. § 1101(a)(27)(H)-(K).  8 U.S.C. § 1255(c)(2).  An immediate relative "means the children, spouses, and parents of a citizen of the United States."  8 U.S.C. § 1151(b)(2)(A)(i).  Plaintiff does not qualify as an immediate relative based on his marriage to a lawful permanent resident.  *See id.*; *see* 8 U.S.C. § 1153(a)(2) (identifying spouses of lawful permanent residents as a second-preference relative for family-sponsored visas).

arbitrary or capricious.  Accordingly, the district court did not err by dismissing

Plaintiff's complaint for failure to state a claim.[4]

   **AFFIRMED.**

---

[4]  Because we conclude that the statute is unambiguous, we need not look at the legislative history to determine whether Congress intended for § 1254a(f)(4) to render lawful an alien's period of unlawful status prior to the grant of TPS.  *See Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (explaining that we need not consider legislative history where a statute is unambiguous and should not do so in order to undermine the plain meaning of the statutory language).  Nor do we address the district court's alternative holding that the Immigration Service's decision is entitled to deference.  *See Silva-Hernandez*, 701 F.3d at 364 n.4 ("Because we conclude that the statute is not ambiguous . . . we need not address the parties' arguments regarding the type of deference afforded to the Immigration Service's interpretation of the statute.").