# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20341

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2019

Lyle W. Cayce
Clerk

OSCAR ERNESTO MELENDEZ,

Plaintiff - Appellant

v.

KEVIN K. MCALEENAN, ACTING SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY; LEE CISSNA, United States Citizenship and
Immigration Services Director; MARK SIEGL, Field Office Director,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Oscar Ernesto Melendez filed suit seeking a declaratory judgment that
the Department of Homeland Security had improperly denied his application
to adjust his status to that of a legal permanent resident. The district court
dismissed his complaint for lack of jurisdiction. The government now concedes
there was jurisdiction but urges we deny relief. Though there is jurisdiction,
Melendez benefits little because we also conclude he did not state a legally
cognizable claim. The district court's ruling is VACATED, and the complaint
is DISMISSED.

No. 18-20341

## FACTS AND PROCEDURAL HISTORY

Melendez, a native and citizen of El Salvador, entered the United States in February 2000 on a one-month nonimmigrant visitor visa. Melendez did not leave the United States after one month or at any later time either. In March 2001, the Attorney General designated El Salvador for Temporary Protected Status ("TPS"). As long as El Salvador is so designated, the special status for Melendez continues. *See United States v. Orellana*, 405 F.3d 360, 366 (5th Cir. 2005). Melendez filed for TPS in August 2001 and had it granted, but the record does not show the date of its grant. From the expiration of his visa in March 2000 to the award of TPS sometime in late 2001, Melendez was an alien unlawfully present in the United States.

We do not have the documentation, but Melendez states (and the government does not dispute) that he has an approved I-130 Petition for Alien Relative filed by his United States citizen brother, and that his visa priority date is in 2003. In July 2016, Melendez filed a Form I-485 with the United States Citizenship and Immigration Services ("USCIS") seeking adjustment of his status to that of a lawful permanent resident and stated that an immigrant visa was immediately available. *See* 8 U.S.C. § 1255(a). USCIS denied his application in September 2017. It determined he could not adjust his status because from the date his visitor visa expired, March 2000, until his filing for TPS, August 2001, Melendez was not lawfully present in the United States.

In November 2017, Melendez filed suit in the United States District Court for the Southern District of Texas against the Secretary of the Department of Homeland Security ("DHS") and two individuals in their official capacities with USCIS. To be clear, this suit does not concern Melendez's imminent removal from the United States. He seeks a declaratory judgment that USCIS erred in its denial of his adjustment application. Melendez claimed both general federal question jurisdiction under 28 U.S.C. § 1331 and

No. 18-20341

a right to sue under the Administrative Procedure Act, 5 U.S.C. §§ 701-706. The district court granted the government's motion to dismiss for lack of jurisdiction. Melendez timely appealed.

## DISCUSSION

### I. *Absence of Jurisdiction and Failure to State a Claim*

The government moved for dismissal based on an absence of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and alternatively for failure to state a claim under Rule 12(b)(6). The district court held it lacked jurisdiction due to 8 U.S.C. § 1252(a)(2)(B)(i) and did not reach the merits question. Section 1252(a)(2)(B)(i) strips federal courts of jurisdiction to review "any judgment regarding the granting of relief under," among others, Section 1255, which is the statute applicable to an adjustment of status. On appeal, the government abandons the argument that there is no jurisdiction, acknowledging one of our decisions in which we held the bar to reviewing a "judgment regarding the granting of relief" applies only to *discretionary* decisions. *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215-16 (5th Cir. 2003). A decision as to "whether an alien satisfies the continuous presence requirement is a nondiscretionary determination." *Id.* at 217. We hold, then, that the denial of Melendez's adjustment application was a nondiscretionary decision based on the finding he was statutorily ineligible, making Section 1252(a)(2)(B)(i)'s jurisdictional bar inapplicable.

On appeal, the government again argues Melendez fails to state a claim and that we should affirm the dismissal of his complaint. Though the only ruling by the district court was based on jurisdiction, "[w]e are free to uphold the . . . judgment on any basis that is supported by the record." *Zuspann v. Brown*, 60 F.3d 1156, 1160 (5th Cir. 1995). We now turn to whether Melendez has stated a claim.

3

No. 18-20341

Had the district court relied on this basis to dismiss, we would review *de novo*. *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 276 (5th Cir. 2001). That necessarily also is our standard when, as here, the district court did not reach the issue and dismissed on a ground we do not accept. Melendez must have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6). In evaluating claims, we accept all well-pled facts as true and view all facts in the light most favorable to the plaintiff. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc). We do not give any weight to either party's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We are not concerned with whether a plaintiff will succeed but only with whether the complaint states a plausible, legally cognizable claim. *Doe ex rel. Magee*, 675 F.3d at 854.

Melendez's claim is that he is entitled to adjust status despite undisputed facts that the government argues make him ineligible. Thus, the issue under Rule 12(b)(6) is one of law. To adjust status, an alien must (1) have been "inspected and admitted or paroled into the United States;" (2) "ma[de] an application for . . . adjustment [of status];" (3) be "eligible to receive an immigrant visa and [be] admissible to the United States for permanent residence;" and (4) have "an immigrant visa . . . immediately available to him at the time [the] application is filed." 8 U.S.C. § 1255(a).

Section 1255(c) lists those who are barred from eligibility for adjustment of status, including "an alien (other than an immediate relative as defined in section 1151(b) . . .) . . . who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). It is clear that between the date Melendez began his visa overstay and at least the date he filed for TPS, he was not in lawful status. Also clear is that the two caveats in Section 1255(c) that

we just quoted are inapplicable. The first applies to an alien who is "an immediate relative," defined as "the children, spouses, and parents of a citizen of the United States." 8 U.S.C. § 1151(b)(2)(A)(i). Melendez's brother is the relative. The second applies if a failure to maintain continuous lawful status after entry was not the petitioner's fault. *See* 8 C.F.R. § 1245.1(d)(2). No facts for that here.

Therefore, Melendez's suit can survive a motion to dismiss for failure to state a claim only if the grant of TPS itself removed the ineligibility based on his earlier unlawful status. That is his argument, which we now review.

## *II. Temporary Protected Status*

Melendez first recognizes that he is a beneficiary of the rights that flow from the Attorney General's designating El Salvador as a foreign state "unable, temporarily, to handle adequately the return" of its nationals after a series of earthquakes in early 2001. *See* 8 U.S.C. 1254a(b)(1)(B); Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214, 14,214 (Mar. 9, 2001); Termination of the Designation of El Salvador for Temporary Protected Status, 83 Fed. Reg. 2,654, 2,655 (Jan. 18, 2018). Second, he acknowledges that generally, in order to receive an adjustment of status, an alien must "maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). Melendez has not done so, as he overstayed the visa that permitted his entry in 2000. Nonetheless, he argues that Congress has eliminated that requirement for those who have been granted TPS.

This contention is based on the following statutory subsection, entitled "Benefits and status during period of temporary protected status;"

> During a period in which an alien is granted temporary protected status under this section--
> (1) the alien shall not be considered to be permanently residing in the United States under color of law;

> (2) the alien may be deemed ineligible for public assistance by a State . . . or any political subdivision thereof which furnishes such assistance;
>
> (3) the alien may travel abroad with the prior consent of the Attorney General; and
>
> (4) for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

8 U.S.C. § 1254a(f).

Melendez's focus is on subpart (4), for what it says and for what it does not. It says that an alien granted TPS, when seeking an adjustment of status under Section 1255, is "considered" to be in "lawful status." It does not mention Section 1255(c)(2) or its requirement of continuous lawful status after entry. Thus, Melendez argues, because he had been granted TPS, he is in lawful status notwithstanding Section 1255(c).

This circuit has not previously had to address this issue. The Eleventh Circuit analyzed a closely related issue in *Serrano v. United States Attorney General*, 655 F.3d 1260 (11th Cir. 2011). Even though Serrano had received TPS, he was not entitled to adjust his status because he had entered the United States without inspection. *Id.* at 1263, 1265. The denial of adjustment of status to someone who had entered without inspection comes from Section 1255(a). The court held that even though an alien in TPS has "lawful status as a nonimmigrant" under the provision Melendez also relies on, the requirement under Section 1255(a) that the alien have been inspected and admitted or paroled still applied. *Id.* at 1265.

The Eleventh Circuit recently relied on *Serrano* in an appeal presenting the same legal argument Melendez brings to us. *Duron v. Stul*, 724 F. App'x 791, 795 (11th Cir. 2018). We agree with that court's careful parsing of Section 1254a(f). As the court explained, the prefatory phrase for the four subparts of that statute limits their applicability to the "period in which an alien is granted

temporary protected status under this section." *Id.* at 794 (quoting § 1254a). We interpret that preface to mean that the statute does not alter the legal effect of other periods of an alien's presence. Therefore, for the period the alien is in TPS, the alien is not "permanently residing in the United States under color of law;" "may be deemed ineligible for public assistance by a State;" "may travel abroad with the prior consent of the Attorney General;" and "shall be considered as being in, and maintaining, lawful status as a nonimmigrant" for purposes of adjustment of status. *Id.* Only for the period of the TPS — a temporal limit on its effect — an alien is "in, and maintaining, lawful status." The statute does not read that aliens who now hold TPS should be regarded as "having been in and maintained" lawful status. What rights and status the alien had prior to the TPS period are the creatures of other statutes or rules.[1]

Melendez recognizes that the difficulty with his challenge is the reality that for a period of time after his 2000 entry on a temporary visa, he was not in lawful status. What he needs is for the TPS to eliminate the relevance of that period of unlawful status. With that goal, he argues in essence that for purposes of adjustment of status, Section 1254a(f)(4) makes the date of the grant of TPS a new entry. Such an argument has no statutory support. To the contrary, the fact that Section 1254a(f) identifies a finite period in which the benefits of TPS will operate makes unreasonable any argument that such status eliminates the effect of any prior disqualifying acts.

---

[1] DHS interprets Section 1254a(f)(4) in this same way. *See* U.S. Dep't of Justice, Immigration and Naturalization Service, General Counsel's Office, Legal Opinion No. 91-27, 1991 WL 1185138 (March 4, 1991) ("Section 244A(f)(4) does not make lawful the alien's unlawful presence in the United States prior to the granting of TPS."); *see also Employer Sols. Staffing Grp. II, L.L.C. v. Office of Chief Admin. Hearing Officer*, 833 F.3d 480, 484 (5th Cir. 2016) (noting that the Department of Justice, Immigration and Naturalization Service is the "predecessor agency" to DHS).

Throughout his briefing, Melendez principally relies on one case, *Medina v. Beers*, 65 F. Supp. 3d 419 (E.D. Pa. 2014). There, the district judge analyzed these statutes in the manner Melendez urges. For the reasons we explain, though, we respectfully disagree.

No. 18-20341

Indeed, we have concluded that should the Attorney General remove a country's special designation, an alien in TPS "reverts to any immigration status that he maintained or was granted while registered for TPS." *Orellana*, 405 F.3d at 365. It is entirely consistent with that contingent consequence that TPS does not absolve an alien of all prior unlawful conduct.

\* \* \*

Melendez overstayed his nonimmigrant visitor visa, accruing time as an alien in unlawful status. That period made him ineligible for an adjustment of status. Consequently, as a matter of law, Melendez failed to state a claim upon which relief can be granted.

The judgment of the district court concluding there was no jurisdiction is VACATED. We enter judgment that the complaint be DISMISSED with prejudice.